No. 82-507

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

PETER A. MORRISON, et al.,

               Plaintiffs,

   -vs-

ERWIN P. HIGBEE, et al.,

               Defendants.

--------------------------------------------

THOMAS MILLER AND LEWIS HUGHES,

               Appellants,

   vs.

JAMES E. ROBERTSON and ORA
MEGEE and ROSE M. MEGEE,

               Intervenors and Respondents.

---

Appeal from:  District Court of the Fifth Judicial District,
               In and for the County of Madison,
               The Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellants:

        Morrow & Sedivy; Terry Schaplow, Bozeman, Montana

    For Respondents:

        Moore, Rice, O'Connell and Refling; David C. Moon,
        Bozeman, Montana

---

Submitted on Briefs:  March 17, 1983

Decided:  June 30, 1983

Filed: JUN 3 0 1983

*Ethel M. Harrison*

---

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Water users, Miller and Hughes, appeal from a judgment ordering them to remove trees and brush from along their irrigation ditches and to allow respondents, Robertson and Megee, to repair and maintain the ditches. The judgment was entered in the District Court of the Fifth Judicial District, Madison County.

The two parallel ditches in question divert water out of South Meadow Creek, which rises in South Meadow Creek Lake in the Beaverhead National Forest, flows easterly, and then empties into Ennis Lake. The ditch used by appellants, Miller and Hughes, is the first ditch of the two parallel ditches to take water out of South Meadow Creek. The second ditch, several feet below the Miller-Hughes ditch, is used by respondents, Robertson and Megee.

Appellant Miller diverts his water out of the upper ditch. The two ditches then meet carrying the water for Megee, Hughes, and Robertson. After the two ditches meet, respondent Megee's ditch diverts water across Miller's land to Megee's land. The water remaining in the main ditch continues then past Hughes' house and to Robertson's land. Robertson is the last water user on the ditch system.

The present appeal arises from the District Court's order requiring removal of mature trees and brush along the banks of the ditches. Appellants, Hughes and Miller, claim that the ditches will wash away if the brush is removed. Respondents, Robertson and Megee, claim that the brush and trees impede ditch maintenance and consume large amounts of water.

To understand how this controversy arose, we must look to a dissatisfied water user's action begun in 1977.

On June 22, 1977, two downstream water users on South Meadow Creek filed a complaint against the water commissioner, seeking proper distribution of water under a 1912 decree. The complainants alleged that the water measuring devices upstream were defective, improperly placed, or locked, thereby preventing proper distribution of water.

Under section 85-5-301, MCA, the Honorable Frank E. Blair ordered a hearing to determine the proper enforcement of the 1912 decree. After the hearing, Judge Blair ordered the appointment of Charles C. Bowman as court referee.

On April 20, 1979, the District Court adopted the recommendations of the court referee and filed findings of fact, conclusions of law, and a decree requiring, among other things, that appellants and respondents remove brush from their ditch banks. The clerk of court certified that copies of the findings, conclusions and decree had been sent to all interested parties. No document labeled "notice of entry of judgment" was filed or mailed by the clerk of court.

In the fall of 1979, Judge Blair asked the court referee to investigate whether the parties had complied with his order. In April 1980, Judge Blair sent letters to the parties pointing out deficiencies found by the court referee. In particular, Judge Blair informed Miller and Hughes that brush had not been cut along the Miller-Hughes ditch.

On May 5, 1980, in response to the letter from Judge Blair, Miller and Hughes filed a petition for modification of order and findings. Miller and Hughes claimed that the ditch banks would wash out if brush were removed. They also moved for substitution of the judge. The Honorable W. W. Lessley assumed jurisdiction and set a hearing on the petition for October 1, 1980.

On September 24, 1980, Robertson and Megee petitioned to intervene in the proceedings for modification of the 1979 order. A pre-trial hearing was not held until November 19, 1981, after which Judge Lessley appointed a Water Master to hold a hearing on the merits of the modification petition.

On April 23, 1982, Robertson and Megee filed a motion to dismiss the petition for modification, on the grounds that the petition was a motion to amend judgment and that the time limits of Rule 52(b), M.R.Civ.P., had not been followed. The District Court denied the motion and set the date for a hearing before the

Water Master.

On May 11 and May 19, 1982, the Water Master conducted hearings. She heard testimony, accepted exhibits, and personally viewed the ditches.

On July 19, 1982, the Water Master filed her findings of fact, conclusions of law, and decree. She found that the brush along the banks impeded maintenance of the ditches. She stated in her memorandum that little evidence was presented to show that the brush prevented erosion of the ditch banks. Most importantly, she found that the aggregate effect of the brush lining the ditch banks resulted in consumption of large amounts of water which would otherwise be available for other water users on the South Meadow Creek. She then ordered the parties to develop a schedule of maintenance to remove the mature brush from the sides of the ditches, excepting the large trees located in the Hughes' yard.

On July 16, 1982, the District Court adopted the Water Master's decision. No notice of entry of judgment was filed. On July 30, Miller and Hughes moved to amend the Master's findings under Rules 52(b) and 53(e), M.R.Civ.P. On August 2, Robertson and Megee moved to amend the judgment under Rule 59(g), M.R.Civ.P.

On August 16 and August 30, the motions were argued. The District Court asked for briefs and the matter was deemed submitted September 9, 1982. On September 20, 1982, the District Court filed an amended judgment and memorandum. On October 8, 1982, a final judgment was filed. A notice of entry of judgment was finally filed on October 12, 1982. Miller and Hughes filed a notice of appeal November 10, 1982.

The three main issues on appeal are:

1. whether the appeal is timely;

2. whether the court referee initially had the authority to recommend removal of the brush; and

3. whether the evidence supports the order that the brush

should be removed.

Respondents have made several strong arguments regarding the timeliness of this appeal. They claim that the certified mailing of Judge Blair's original findings of fact, conclusions of law, and decree by the clerk of court constituted notice of entry of judgment within the meaning of Rule 77(d), M.R.Civ.P. They then argue that the petition for modification filed one year later was a motion to amend judgment and not timely under Rule 59(g), M.R.Civ.P.

Even if the petition was timely, respondents argue that since the petition was not noticed for hearing or heard within the time limitations of Rule 59(d), it was deemed denied as of May 15, 1980. The time for appeal then expired June 17, 1980.

Lastly, respondents argue that the motion to amend judgment filed on July 30, 1982, was also not heard within the time requirements of Rule 59(d), and was therefore deemed denied on August 10, 1982. The time for appeal expired then on September 12, 1982.

Respondents' procedural arguments must fail simply because no notice of entry of judgment was filed until October 12, 1982. The notice of appeal filed on Novemer 10, 1982, was therefore timely.

If a notice of entry of judgment had been filed, respondents' argument that the time for appeal began to run when post-trial motions were deemed denied would be compelling, especially in light of the cases stating that a District Court lacks jurisdiction after the motions are deemed denied. See Winn v. Winn (1982),_____Mont._____, 651 P.2d 51, 39 St.Rep. 1831, and cases cited therein. Moreover, the adoption of respondents' argument would lead to a fundamental contradiction. If the thirty-day time for appeal began to run after the post-trial motions were deemed denied, then the District Court would lose jurisdiction prior to its notice of entry of judgment.

This Court has consistently stated that it is the filing of

the notice of entry of judgment that begins the running of the time limitations for filing a notice of appeal. Haywood v. Sedillo (1975), 167 Mont. 101, 535 P.2d 1014; Pierce Packing Co. v. District Court (1978), 177 Mont.50, 579 P.2d 760. This rule has been technically applied in order to assure proper notice and an understanding of when the time for appeal begins to run. In both Haywood and Pierce Packing, we concluded that actual notice was not sufficient. As in Pierce Packing, we are again led to a technical application of the rule, and find that the appeal is timely.

One further consideration has influenced our conclusion that the appeal is timely. This action began under section 85-5-301, MCA, as a dissatisfied water user's action. The procedure governing such an action is quite informal. No formal response pleadings or motions are required. See Allen v. Wampler (1964), 143 Mont. 486, 491, 392 P.2d 82, 85, quoting Gans and Klein Investment Co. v. Sanford (1932), 91 Mont. 512, 8 P.2d 808; and Sain v. Montana Power Co. (1936), 84 F.2d 126. Since standard trial procedures are not followed in these informal, summary proceedings, the time limits governing post-trial procedures should not be strictly applied.

Appellants argue that the court referee lacked the authority to recommend the removal of brush along the ditch banks. Since the District Court adopted the referee's findings, appellants are actually challenging the authority of the District Court.

As noted above, this action began as a dissatisfied water user's action provided for in section 85-5-301, MCA. The purpose of a dissatisfied water user's action is to enforce the original decree, and oversee the water commissioner's distribution of water through properly maintained ditches, headgates, and other water measuring devices. See sections 85-5-301, and 85-5-302, MCA; Luppold v. Lewis (1977), 172 Mont. 280, 563 P.2d 538; and Allen, supra. Here, the District Court ordered the removal of trees and brush on the ditch banks in order to facilitate ditch

maintenance and to conserve the water absorbed by the trees and brush for other water users. The District Court's order does nothing more than enhance the method of distribution by ordering a well maintained ditch system.

The evidence supports the Water Master's findings that removal of the mature brush and trees would not cause significant erosion. The evidence also supports the findings that certain brush and trees need to be removed to ensure proper ditch maintenance.

The District Court's judgment is affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices