DA 09-0313

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 14

IN THE MATTER OF THE WATER COMPLAINT OF:

CHARLES E. KELLY, Ph.D and AMELIA C. KELLY;
and CLARICE DREYER and STEVE KELLY,

        Petitioners and Appellants.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. WC 2007-1A
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

    For Appellants Charles E. Kelly, Ph.D. and Amelia C. Kelly:

        Brian K. Gallik, Bonnie L. Jarrett, Goetz, Gallik & Baldwin, P.C.,
        Bozeman, Montana

    For Appellants Clarice Dreyer and Steve Kelly:

        Clarice Dreyer and Steve Kelly (Self-Represented), Bozeman, Montana

    For Appellee:

        Michael J. L. Cusick, Moore, O'Connell & Refling, P.C.,
        Bozeman, Montana

Submitted on Briefs:  January 13, 2010

Decided:  February 2, 2010

Filed:

_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Plaintiffs Clarice Dreyer and Steve Kelly (Dreyer-Kellys) and Amelia C. Kelly[1] appeal from decisions of the Eighteenth Judicial District Court denying the plaintiffs' dissatisfied water users' complaints. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUD

¶2 The plaintiffs in this case are the owners of water rights in the Middle Cottonwood Creek in Gallatin County, Montana. The Dreyer-Kellys hold water rights designated as 41H-W-101024 and 41H-W-115513-01. Amelia Kelly's water rights are designated as 41H-W-023562 and 41H-W-03379.

¶3 On March 2, 1993, the Montana Department of Natural Resources and Conservation (DNRC) issued a provisional water right permit to David and Cora Rall (Ralls) allowing them to divert 1 cubic foot per second (c.f.s.) on a year-round basis from the Middle Cottonwood Creek, with a total maximum volume of 723.91 acre-feet, for an off-stream reservoir (a fish pond), with a surface area of .92 acres and a total capacity of 6.9 acre-feet. At some point between June 8, 2007, and March 17, 2009, the Ralls' permit was altered by DNRC. The provisional permit currently allows the Ralls a diversion of .75 c.f.s., for a total of 401.6 acre-feet for the fish pond.

¶4 The Ralls' pond is south of Middle Cottonwood Creek. The Middle Cottonwood flows in a westerly direction in the vicinity of the Ralls' pond. The diversion to the

---

[1] Charles E. Kelly, a co-plaintiff in this action, is now deceased.

Ralls' pond from the Middle Cottonwood occurs via the Davis Ditch.[2]  The Davis Ditch branches from the Middle Cottonwood Creek from a man-made diversion, and runs in a southwesterly direction towards the Ralls' pond.  Water is then diverted via a pipeline from Davis Ditch, and discharged from the Ralls' pond back into Davis Ditch.  The Ralls have also dug a well to bring additional water into the fish pond.

¶5     In June 1995, the Ralls submitted an application for a change in water rights which would have potentially affected the water rights associated with the Middle Cottonwood and Davis Ditch.[3]  Several parties objected to the change application, including the Dreyer-Kellys.  The application was processed by the DNRC, and certain aspects of the application were ruled upon by the Water Court, resulting in a final order issued by the Water Court in November 2002.  The Water Court then remanded the application back to DNRC and quantified the water rights in the Davis Ditch.  Amelia Kelly was allowed 5 miner's inches of water for domestic use, and 18.75 inches of water for stock use.  The allotments held by the other water rights users were quantified as well.  As a result of DNRC's decision, a total of 146.87 miner's inches of water was allotted for diversion from the Middle Cottonwood into Davis Ditch.  After DNRC had quantified the water rights in the Davis Ditch, it terminated the Ralls' application for a change in water rights.

¶6     On August 6, 2007, John Morse (Morse) was appointed Water Commissioner for the Middle Cottonwood Creek by the District Court in response to a petition for

---

[2]  A 1922 Montana district court decision decreed 150 miner's inches of water for diversion into the Davis Ditch from the Middle Cottonwood for purposes of irrigation, with a priority date of 1871 for senior water users.
[3]  The other water rights holders in Davis Ditch are not parties to the instant suit.

3

enforcement of a water court decree regarding the Middle Cottonwood. The Ralls, Amelia Kelly, the Dreyer-Kellys, and 3 other users claimed water rights in the Middle Cottonwood. The authority of the water commissioner is defined by statute as follows:

> **85-5-105. Power and duty to distribute water.** Upon the issuance of such order, the water commissioner or commissioners shall have authority and it is hereby made his or their duty to admeasure and distribute to the users thereof, as their interests may appear and be required, the stored and supplemental waters stored and as released by the department of natural resources and conservation under provisions of chapter 1 of this title, to be diverted into and through said streams, ditch or extension of ditch, watercourse, spring, lake, reservoir, or other source of supply in the same manner and under the same rules as decreed water rights are admeasured and distributed. Such water commissioner or commissioners and the owners and users of such stored and supplemental waters shall be bound by and be subject to the provisions of this chapter and all acts amendatory thereof and supplemental thereto; provided, that the admeasurements and distribution of such stored and supplemental waters shall in no way interfere with decreed water rights. The purpose of parts 1 through 3 of this chapter is to provide a uniform, equitable, and economical distribution of adjudicated, stored, and supplemental waters.

¶7 Commissioner Morse began monitoring the water available for the Middle Cottonwood upon his appointment. Commissioner Morse conducted an evaluation of the water diversion issues related to the Ralls' use of water from the Middle Cottonwood for their fish pond. He conducted a "water walk" of the area, spoke with all interested parties, including Scott Compton (Compton), DNRC Regional Manager, and reviewed relevant permits and legal documents. On August 15, 2007, Commissioner Morse shut off water to the Ralls' pond out of concern that the Ralls' use of water was adversely affecting senior users.

¶8 On August 25, Commissioner Morse turned the water back on after additional investigation satisfied him that use of the water by the Ralls' pond was

4

"non-consumptive"—i.e., it returned the same amount of water to the Davis Ditch as it diverted. *See* 85-2-329(2), MCA (" 'Nonconsumptive use' means a beneficial use of water that does not cause a reduction in the source of supply and in which substantially all of the water returns without delay to the source of supply, causing little or no disruption in stream conditions."). Additionally, Commissioner Morse insisted on certain repairs to the water diversion system, and the monitoring of water levels by the use of water gauges, to ensure that the pond returned as much water to the Davis Ditch as was diverted. In a memorandum to the District Court, Commissioner Morse explicitly stated that the decision to allow diversion of water to the Ralls' pond was based on this Court's decision in *Baker Ditch Co. v. Dist. Ct. of Eighteenth Jud. Dist.*, 251 Mont. 251, 824 P.2d 260 (1992), wherein the Court stated that "[i]f a subsequent appropriator is using water in accordance with the decree and such use cannot in any way be a detriment to a prior appropriator, then the subsequent appropriator has the right to the use of such water." *Baker Ditch*, 251 Mont. at 256, 824 P.2d at 263. Commissioner Morse concluded that the Ralls' use of water for the fish pond was not affecting the water rights of any senior users. He conducted subsequent visits to assure that the Ralls' use of water for the fish pond was non-consumptive.

¶9 On November 30, 2007, the Dreyer-Kellys filed a dissatisfied water users' complaint pursuant to § 85-5-301, MCA. On December 28, 2007, Amelia Kelly filed a dissatisfied water users' complaint as well. Section 85-5-301, MCA, reads as follows:

> **85-5-301. Complaint by dissatisfied user.** (1) A person owning or using any of the waters of the stream or ditch or extension of the ditch who is dissatisfied with the method of distribution of the waters of the stream or

ditch by the water commissioner or water commissioners and who claims to be entitled to more water than the person is receiving or to a right prior to that allowed the person by the water commissioner or water commissioners may file a written complaint, duly verified, setting forth the facts of the claim.

(2) Upon receipt of the complaint, the judge shall fix a time for the hearing of the petition and shall direct that notice be given to the parties interested in the hearing as the judge considers necessary. At the time fixed for the hearing, the judge shall hear and examine the complainant and other parties who appear to support or resist the claim and examine the water commissioner or water commissioners and witnesses regarding the charges contained in the complaint.

(3) Upon the determination of the hearing, the judge shall make findings and issue an order that the judge considers just and proper. If it appears to the judge that the water commissioner or water commissioners have not properly distributed the water according to the provisions of the decree, permit, certificate, or change in appropriation right, the judge shall give the proper instructions for distribution of the water.

(4) The judge may remove any water commissioner and appoint a new water commissioner if the judge determines that the interests of the parties in the waters mentioned in the decree, permit, certificate, or change in appropriation right will be best served by appointing a new water commissioner. If it appears to the judge that the water commissioner has willfully failed to perform the water commissioner's duties, the water commissioner may be proceeded against for contempt of court, as provided in contempt cases. The judge shall make an order regarding the payment of costs of the hearing that the judge determines is just and proper.

¶10 In their complaint against the Ralls and DNRC, the Dreyer-Kellys alleged various violations of Montana's Water Use Act, Title 85, MCA, regarding the original grant of the 1993 permit by DNRC, the distribution of water under that permit, and the delayed verification of water rights associated with the Ralls' permit. The Dreyer-Kellys also claimed that the Ralls could not receive water for their pond unless all 1871 rights in the Davis Ditch were being fulfilled. The Dreyer-Kellys also claimed the Ralls lacked a right-of-way to appropriate water through the Davis Ditch, and that Commissioner Morse

6

engaged in improper communications with DNRC regarding the Ralls' use of water from the Middle Cottonwood and its effect on the rights of senior users.

¶11 In her complaint, Amelia Kelly alleged that the distribution of water from the Middle Cottonwood to the Ralls' pond was out of priority with respect to the existing water rights and resulted in degradation of water quality to the Middle Cottonwood. Amelia Kelly also claimed that the Ralls did not have a right-of-way to divert water through the Davis Ditch.

¶12 These dissatisfied water users' complaints were consolidated and a hearing was scheduled for November 24, 2008. Such hearings are "informal, summary proceedings" which do not follow normal trial procedures. *Morrison v. Higbee*, 204 Mont. 501, 506, 668 P.2d 1029, 1032 (1983). Prior to the hearing, Amelia Kelly deposed Compton. The Ralls filed a motion in limine, seeking to exclude evidence from the deposition testimony of DNRC officials, which they argued was outside the scope of the dissatisfied water users' complaint. The Ralls claimed that the plaintiffs were in essence attempting to re-litigate the validity of the Ralls' permit, and that such arguments were outside the scope of the instant action.

¶13 The Dreyer-Kellys, Amelia Kelly and her counsel, as well as the Ralls and their counsel, were present at the November 24 hearing. Given the informal nature of the proceedings, the District Court declined to rule on the motion in limine, and instead decided to proceed "step by step" because the Dreyer-Kellys were self-represented. At the outset of the hearing, however, the District Court made it clear that the proceedings were limited in scope:

7

My area of inquiry is limited to two matters: what rights have been adjudicated by decree or created by permit or change; and number two, did the water commissioner distribute water in accordance with those rights. Those are the two things I have to consider. Stuff about whether DNRC did a good job or DNRC did a bad job or whether you like them or hate them or whether they, you know, talked with people when they shouldn't have talked to people—irrelevant. I will not consider those issues because they are not within my jurisdiction today.

¶14 At the hearing, all parties were given the opportunity to testify and examine Commissioner Morse. Furthermore, counsel for Amelia Kelly presented argument to the District Court that it should take account of water quality issues in the instant proceedings, and asserted there was evidence in the record showing that algae blooms in the fish pond were affecting the water quality of the Middle Cottonwood. Additionally, the District Court itself raised the issue as to whether the water was being diverted and returned to the Middle Cottonwood in accordance with the rights as decreed. When queried, Commissioner Morse agreed there were concerns in this regard, but did not give any testimony indicating how this issue could be resolved in the dissatisfied water users' complaint action.

¶15 Commissioner Morse prepared a report for the District Court after the hearing. The report verified the Ralls' pond permit with Compton. The report stated that that the fish pond could be operated as non-consumptive with the presence of measuring devices and supplemental well water.

¶16 The District Court issued findings of fact, conclusions of law, and orders regarding these complaints on March 19, 2009. The District Court acknowledged that the Dreyer-Kellys alleged a host of Water Use Act violations by the Ralls, as well as

improper actions by DNRC, including those related to the issuance of the Ralls' permit. However, the District Court concluded that its jurisdiction was "limited to the question of whether the Water Commissioner is, has been, and will be distributing Davis Ditch water in accordance with existing decree, permit and the controlling principles of Montana Water Law." The District Court noted that it could consider the fact that the Ralls' rights to appropriation were junior to the rights held by the Dreyer-Kellys, and that the Ralls should not receive any water if these senior rights were not being fulfilled.

¶17 Relying upon *Baker Ditch*, the District Court stated that "[i]f a subsequent appropriator is using water in accordance with the decree and such use cannot in any way be a detriment to a prior appropriator, then the subsequent appropriator has the right to the use of such water." *Baker Ditch*, 251 Mont. at 256, 824 P.2d at 263. From this, the District Court reasoned that a junior right may not be shut down where doing so would gain nothing for the senior right holder.

¶18 Based upon the testimony and evidence presented by Commissioner Morse, the District Court concluded that the Ralls' pond was non-consumptive and did not affect the senior rights of the Dreyer-Kellys. Accordingly, the District Court held that Commissioner Morse "shall continue to divert .75 c.f.s. to the Ralls' pond diversion so long as .75 c.f.s. or more return to Davis Ditch from the pond. The Water Commissioner shall continue to verify that .75 or more c.f.s. continues to return to Davis Ditch. If the return flow falls below .75 c.f.s. the Water Commissioner shall reduce the diversion to the pond proportionately."

¶19 Additionally, the District Court rejected the Dreyer-Kellys' contentions that the water allotted to the Ralls could not pass through the Davis Ditch. The District Court concluded this argument had not been adequately argued and that the Dreyer-Kellys failed to present any legal authority for these contentions. While the District Court acknowledged that the Dreyer-Kellys were self-represented, and was willing to make "all reasonable efforts to level the playing field," it stated it was not in a position to do legal research for a party.

¶20 The District Court also issued findings of fact, conclusions of law and an order regarding Amelia Kelly's complaint. The District Court noted that her complaint alleged Commissioner Morse's distribution of water to the Ralls' pond was out of priority with respect to her senior rights, and that the distribution resulted in degradation of the water returned to the Davis Ditch. Amelia Kelly also alleged that the Ralls' water lacked a right-of-way through the Davis Ditch.

¶21 In its findings, the District Court acknowledged that the Ralls' water rights were junior to those held by Amelia Kelly. Quoting § 85-2-401(1), MCA, the District Court noted that Amelia Kelly, as a senior user, could not assert her right to "prevent changes by later appropriators in the condition of water occurrence, such as the increase or decrease of stream flow or the lowering of a water table, artesian pressure, or water level, if the prior appropriator can reasonably exercise the water right under the changed conditions." The District Court also cited to *Baker Ditch*, as it did in relation to the Dreyer-Kellys' complaint, for the proposition that the Ralls could appropriate water so long as it caused no detriment to Amelia Kelly as a senior right user. Relying upon the

testimony of Commissioner Morse, the District Court concluded that the Ralls' use of water was non-consumptive, and could continue as long as it remained as such with proper monitoring.

¶22 With regard to Amelia Kelly's challenge based on the alleged degradation of water quality, the District Court concluded that this issue could not be considered in a proceeding arising pursuant to § 85-5-301, MCA. The District Court also rejected Amelia Kelly's argument that the Ralls could not utilize the Davis Ditch for their diversion, concluding that she failed to support this contention with any supporting legal argument or authority.

¶23 The Dreyer-Kellys subsequently filed a motion to alter or amend the District Court's decision pursuant to M. R. Civ. P. 59(a) and (g), and M. R. Civ. P. 60(b)(1). The District Court denied this motion.

¶24 The Dreyer-Kellys and Amelia Kelly now appeal from the decisions of the District Court. We state the issue on appeal as follows: *Did the District Court err in denying the plaintiffs' dissatisfied water users' complaints?*

## STANDARD OF REVIEW

¶25 We review findings of fact in a civil bench trial to determine whether they are supported by substantial credible evidence. We review such evidence in a light most favorable to the prevailing party, and leave the credibility of witnesses and weight assigned to their testimony to the determination of the district court. *Luppold v. Lewis*, 172 Mont. 280, 284, 563 P.2d 538, 540-41 (1977). We review a district court's

conclusions of law in this context for correctness. *DeNiro v. Gasvoda*, 1999 MT 129, ¶ 9, 294 Mont. 478, 982 P.2d 1002.

## DISCUSSION

¶26 The plaintiffs advance several arguments for reversal of the District Court's decision. First, they contend the District Court erred in allowing the Ralls to appropriate water through the Davis Ditch under the provisional permit issued by DNRC in 1993. They argue the Ralls lack a right-of-way to appropriate water through the Davis Ditch, and that use of the Davis Ditch violates the terms of their permit since the Ralls do not return water to the Middle Cottonwood (the source of the diversion), but instead to the Davis Ditch.

¶27 In its order, District Court rejected this contention because neither of the plaintiffs presented legal argument or authority for their position. The District Court, relying upon *In Re Marriage of Snow*, 2002 MT 143, ¶ 28, 310 Mont. 260, 49 P.3d 610, and other cases, noted that this Court will not consider unsupported arguments or issues where the parties have failed to develop legal analysis to support their positions. The District Court held that the same principle was applicable to briefs filed in the District Court, and rejected the argument on this ground.

¶28 While the District Court was sympathetic to the fact that the Dreyer-Kellys were self-represented, it nonetheless concluded that it would not conduct legal research on their behalf. The District Court also noted that while Amelia Kelly began the proceeding self-represented, she had since acquired counsel, and that counsel for Amelia Kelly had failed to present any legal argument in support of this position as well. On appeal, the

plaintiffs do not contend that the District Court erred in rejecting this argument on this basis. Accordingly, we decline to consider it further. *See Snow*, ¶ 28; *Olson v. Shumaker Trucking and Excavating Contractors, Inc.*, 2008 MT 378, ¶ 56, 347 Mont. 1, 196 P.3d 1265.

¶29 Second, the plaintiffs argue that the District Court erred when it concluded the Ralls' use of water is non-consumptive. They claim that the Ralls' use of the water has in fact dried up the Davis Ditch on several occasions, thus depriving senior users of their lawful consumptive uses, such as irrigation and stock watering. However, the plaintiffs have failed to demonstrate that the District Court's findings on this point were not supported by substantial credible evidence, especially in light of the fact that such findings must be viewed in a light most favorable to the Ralls as the prevailing party. *See DeNiro*, ¶ 9. Moreover, the District Court based its determination regarding the "non-consumptive" character of the Ralls' use on the evidence and testimony presented by Commissioner Morse. Such determinations are left to the District Court in non-jury civil proceedings. *See Luppold*, 172 Mont. at 284, 563 P.2d at 540-41. Furthermore, the District Court specifically directed Commissioner Morse to continue to monitor the Ralls' use of water in order to ensure that it remained non-consumptive in character. For these reasons, we affirm the District Court's determination that the Ralls' use of water was non-consumptive.

¶30 Third, the plaintiffs assert that the District Court erred when it refused to consider water quality issues in the dissatisfied water users' proceeding, and claim that the degradation of the water when it flows from the fish pond back into the Davis Ditch

should have been considered by the District Court and Commissioner Morse. The District Court observed that the plaintiffs raised a host of issues that went beyond the statutory constraints for a water complaint set forth in § 85-5-301, MCA. The District Court held that the water complaint could only address issues related to the distribution of water, and that it was not in a position to issue rulings related to water quality.

¶31 On appeal, the Dreyer-Kellys fail to demonstrate specifically how the District Court erred in its interpretation of § 85-5-301, MCA, and have failed to establish that water quality issues can be addressed within the parameters of the dissatisfied water user complaint action as defined by statute. This type of proceeding is an "informal, summary proceeding[]." *Morrison*, 204 Mont. at 506, 668 P.2d at 1032. Furthermore, as we stated in *Baker Ditch*,

> The law is clear the only matters for decision relative to the appointment of a water commissioner and petitions in relation to his duties, is whether or not the commissioner is distributing water to existing water right holders pursuant to the adjudication decree. See *Quigley v. McIntosh* (1940), 110 Mont. 495, 103 P.2d 1067. The only purpose of the petition of a dissatisfied water user is to enforce rights determined by the decree.

*Baker Ditch*, 251 Mont. at 256, 824 P.2d at 263.

Water quality issues are not amenable to disposition in such proceedings. The plaintiffs' water quality concerns, as well as whether or not the Ralls are in compliance with the terms of their provision permit, are clearly outside the scope of this limited proceeding.

¶32 Amelia Kelly relies upon *Morrison* and *Quigley* to argue that Commissioner Morse must enforce the "purpose" of the decreed rights, which in this case means that the senior water users must have "potable" water. Accordingly, Amelia Kelly argues

14

Commissioner Morse may make water quality determinations because they affect the distributed water. However, neither *Morrison* nor *Quigley* held that a water commissioner may make adjudications on water quality in the course of his or her distribution determinations. In *Morrison*, the district court upheld a water commissioner's decision to have some shrubs and trees removed because they interfered with distribution. *Morrison*, 204 Mont. at 507, 668 P.2d at 1032. *Morrison* simply does not stand for the proposition that a water commissioner is invested with the authority to rule on water quality issues.

¶33 Finally, the plaintiffs raise several objections to DNRC's handling of the Ralls' permit, as well as its role in communicating with Commissioner Morse in the course of his evaluation of the water use in this case. As the District Court correctly noted, any objections to the conduct of DNRC in issuing the permit or providing information to the Ralls or Commissioner Morse are outside the scope of the informal dissatisfied water user complaint process.

## CONCLUSION

¶34 For the foregoing reasons, we affirm.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

15