FILED

06/14/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0576

DA 15-0576

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 145

ELDORADO COOP CANAL COMPANY,

      Plaintiff and Appellant,

    v.

BEN HOGE, in his capacity as current
Water Commissioner for the Perry v. Beattie Decree,
Cause No. 371, Montana Ninth Judicial District Court,

      Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Ninth Judicial District, In and For the County of Teton, Cause No. DV 15-037 Honorable Robert G. Olson, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            John E. Bloomquist, Bloomquist Law Firm, P.C., Helena, Montana
            (for Eldorado Coop Canal Co.)

      For Appellee:

            Stephen R. Brown, Garlington, Lohn & Robinson, PLLP, Missoula,
            Montana (for Lower Teton Joint Objectors)

                  Submitted on Briefs: April 27, 2016

                            Decided: June 14, 2016

Filed:

                        _____
                                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Eldorado Coop Canal Company appeals the order of the Ninth Judicial District Court, Teton County, denying its dissatisfied water user complaint.  Appellees, the Lower Teton Joint Objectors[1] (Joint Objectors), appeared as interested parties in the District Court proceeding.  We restate the dispositive issue on appeal as follows:

> *Whether the District Court erred in denying Eldorado's dissatisfied water user complaint.*

¶2     We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     The Water Court currently is in the process of adjudicating the existing water right claims of all appropriators in the Teton River Basin—Basin 41O.  As part of that process, the Water Court has issued a temporary preliminary decree for Basin 41O.  Various claims subject to the temporary preliminary decree have been at issue in numerous cases before this Court.  *E.g.*, *Fellows v. Saylor*, 2016 MT 45, 382 Mont. 298, 367 P.3d 732 (hereafter *Fellows I*); *Teton Co-Op Canal Co. v. Teton Coop Reservoir Co.*, 2015 MT 344, 382 Mont. 1, 365 P.3d 442; *Teton Coop. Reservoir Co. v. Farmers Coop. Canal Co.*, 2015 MT 208, 380 Mont. 146, 354 P.3d 579; *Skelton Ranch, Inc. v. Pondera County Canal & Reservoir Co.*, 2014 MT 167, 375 Mont. 327, 328 P.3d 644.  Both Eldorado and the Joint Objectors have been involved in a number of these disputes.  *E.g.*, *In re Eldorado Coop Canal Co.*, 2016 MT 94, 383 Mont. 205, 369 P.3d 1034 (hereafter

---

[1] The Lower Teton Joint Objectors are Steven Kelly, Monte Giese, William Riechelt, and Kalanick Ranches, Inc.

2

*Eldorado I*); *Eldorado Co-Op Canal Co. v. Lower Teton Joint Objectors*, 2014 MT 272, 375 Mont. 420, 337 P.3d 74 (hereafter *Eldorado II*).

¶4      Eldorado is a water supply entity that distributes water to shareholders from the Teton River northwest of Choteau, Montana.  Eldorado owns four water rights that were decreed in *Perry v. Beattie*, Case No. 371 (Mont. 11th Judicial Dist. Ct., March 28, 1908).  Eldorado's water rights historically have been administered under the terms of the *Perry* Decree by a water commissioner appointed by the District Court pursuant to § 85-5-101, MCA.

¶5      In November 2014, the Water Court issued an order addressing objections by various parties—including the Joint Objectors—to Eldorado's existing water right claims as established under the temporary preliminary decree.  The order determined the elements of Eldorado's existing water right claims and modified the temporary preliminary decree.  The Water Court concluded that Eldorado's water right claims included a cumulative annual volume quantification of 15,000 acre-feet.  The Water Court determined that this volume quantification represented Eldorado's historic beneficial use of its existing water rights.  The Water Court incorporated the volume quantification into the post-decree abstracts for each of Eldorado's water right claims and concluded that "Eldorado's rights shall appear in the Final Decree for the Teton River Basin (41O) in accordance with the [amended] abstracts attached hereto."

¶6      Eldorado appealed the Water Court's order, which we recently addressed in *Eldorado I*.  In *Eldorado I*, we concluded that the Water Court acted within its discretion

under § 85-2-234(6)(b)(iii), MCA, in determining that Eldorado's claims required a volume quantification in order to adequately administer its water rights. *Eldorado I*, ¶ 25. We concluded further that the Water Court did not err in determining that Eldorado historically put to beneficial use 15,000 acre-feet of water under its existing water rights. *Eldorado I*, ¶ 34. Accordingly, we upheld the Water Court's determination that Eldorado's water rights are subject to an annual volumetric quantification and affirmed the Water Court's order. *Eldorado I*, ¶¶ 34, 43.

¶7 The Joint Objectors are downstream Teton River water rights holders whose predecessors were not parties to the *Perry* Decree. In July 2015, the Joint Objectors informed Water Commissioner Ben Hoge that Eldorado was approaching the volumetric quantification established by the Water Court's order and requested that Water Commissioner Hoge cap the distribution of Eldorado's water to the volumetric quantification. After learning of the request, Eldorado petitioned the Water Court to stay the volume quantification order pending Eldorado's appeal to this Court in *Eldorado I*. The Water Court denied Eldorado's request in August 2015. Later that same month, Water Commissioner Hoge ceased delivering water to Eldorado.

¶8 On August 23, 2015, Eldorado filed a dissatisfied water user complaint in the District Court pursuant to § 85-5-301, MCA. Eldorado filed its complaint against Hoge in his capacity as Water Commissioner for the *Perry* Decree. In its complaint, Eldorado sought an order directing the Water Commissioner to deliver water under Eldorado's flow rates as decreed in *Perry* and to refrain from imposing the volumetric quantification.

4

The Joint Objectors opposed Eldorado's complaint as interested parties. The District Court held a hearing on the matter on September 16, 2015. Two days later, the District Court issued its order denying Eldorado's dissatisfied water user complaint. Eldorado appeals.

## STANDARD OF REVIEW

¶9 On appeal from a dissatisfied water user proceeding we review findings of fact to determine whether they are supported by substantial credible evidence and conclusions of law for correctness. *In re Water Complaint of Kelly*, 2010 MT 14, ¶ 25, 355 Mont. 86, 224 P.3d 640.

## DISCUSSION

¶10 *Whether the District Court erred in denying Eldorado's dissatisfied water user complaint.*

¶11 As an initial matter, we decline to address Eldorado's challenge to the Water Court's determination that its existing water rights are subject to a cumulative annual volume quantification of 15,000 acre-feet. We upheld the Water Court's determination regarding the elements of Eldorado's existing water rights in *Eldorado I* and affirmed the 15,000 acre-foot volume quantification. *Eldorado I*, ¶¶ 34, 43. Accordingly, the volumetric quantification issue no longer presents an actual controversy and has been rendered moot. *See Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 31, 333 Mont. 331, 142 P.3d 864. The issues related to enforcement of the volumetric quantification are not moot, however, and we will consider them.

5

¶12 In its order, the District Court first concluded that the Water Court has "jurisdiction over all matters relating to the determination of existing water rights" in Montana and that a district court "only has jurisdiction to enforce the provisions of a final decree or a temporary preliminary decree as issued and modified by a water court." Accordingly, the District Court determined that it did not have the authority to stay the volumetric quantification imposed on Eldorado's water rights. The court concluded further that it must enforce the Water Court's volumetric quantification because its jurisdiction in a dissatisfied water user action is limited to determining "whether [or not] the water commissioner is distributing water to existing water rights holders pursuant to the adjudication decree." (Quoting *Baker Ditch Co. v. Dist. Ct.*, 251 Mont 251, 256, 824 P.2d 260, 260 (1992).) Accordingly, the District Court denied Eldorado's dissatisfied water user complaint because it concluded that it had "no power to override the decision of the Water Court" to establish a volumetric quantification for Eldorado's existing water rights.

¶13 On appeal, Eldorado asserts several points of error. Eldorado first contends that the purpose of a dissatisfied water user action is limited to enforcing the rights determined by a prior decree. In this case, Eldorado asserts, the prior decree that should be enforced is the *Perry* Decree. As such, Eldorado claims that the District Court erred by not enforcing the *Perry* Decree's terms and by instructing the Water Commissioner to enforce the volumetric quantification established in the modified temporary preliminary decree. Furthermore, Eldorado contends, the Water Court's order imposing a volumetric

6

quantification is not enforceable because the statutory procedures for enforcing a water court decree were not initiated. Finally, Eldorado claims that the District Court's order violated its due process rights because it was not given notice or any opportunity to be heard before the District Court enforced the 15,000 acre-feet volumetric quantification.

¶14 The Joint Objectors counter that Eldorado's dissatisfied water user complaint is a collateral request for a stay of the Water Court's order imposing a volumetric quantification. The Joint Objectors therefore contend that Eldorado waived its right to challenge the volumetric quantification here because Eldorado did not challenge the Water Court's denial of its request for a stay of the volumetric quantification. The Joint Objectors next assert that under Montana's water rights system the Water Court has exclusive jurisdiction to quantify the extent of Eldorado's existing water rights based on beneficial use. The Joint Objectors contend that the Water Court's volumetric quantification order therefore supersedes the *Perry* Decree under the plain language of the Water Use Act. Accordingly, the Joint Objectors claim, the District Court did not err in denying Eldorado's dissatisfied water user complaint because the Water Commissioner lacks the authority to deliver water in excess of the volumetric quantification established by the Water Court. Finally, the Joint Objectors assert that Eldorado received all the notice it was due because it participated during every stage of the proceedings that resulted in the volumetric quantification.

7

**Waiver by Eldorado's failure to seek review of the Water Court's denial of its stay request**

¶15 M. R. App. P. 22 allows a party that has unsuccessfully sought to stay judgment pending appeal to seek relief in this Court. We agree with Eldorado that it did not waive its right to file a dissatisfied water user complaint by failing to seek such relief in its prior appeal. Montana statute provides, in relevant part:

> A person owning or using any of the waters of the stream . . . who is dissatisfied with the method of distribution of the waters of the stream . . . by the water commissioner . . . and who claims to be entitled to more water than the person is receiving . . . may file a written complaint, duly verified, setting forth the facts of the claim.

Section 85-5-301(1), MCA. The "whole question" in a dissatisfied water user proceeding under § 85-5-301, MCA, "is whether the water commissioner is distributing water to the respective users according to the applicable decree." *Fellows v. Office of Water Comm'r*, 2012 MT 169, ¶ 16, 365 Mont. 540, 285 P.3d 448 (citations omitted) (hereafter *Fellows II*).

¶16 While Eldorado's dissatisfied water user complaint did challenge the Water Court's volumetric quantification that was then pending on appeal, it also challenged the Water Commissioner's distribution of Teton River water and contested which water rights decree is applicable to that distribution. Eldorado's complaint therefore involved the distribution of water, while Eldorado's motion to stay the Water Court's order involved the adjudication of its existing water rights. Montana's water rights system distinguishes water adjudication from water distribution. *Compare* § 3-7-501, MCA (granting exclusive jurisdiction to the Water Court to determine existing water rights),

*with* § 85-2-406, MCA (granting jurisdiction to district courts to supervise the distribution of water among appropriators). *See also Baker Ditch Co.*, 251 Mont. at 255, 824 P.2d at 260 (concluding that "the statutes governing [the distribution of water] are for the purpose of expeditious administration and not for the purpose of adjudication"). As such, Eldorado's failure to seek relief from the Water Court's denial of its motion to stay the order establishing a volumetric quantification did not result in waiver of its right to challenge the distribution of water through a dissatisfied water user action.

**Enforcement of the Water Court's volumetric quantification**

¶17   Eldorado contends that the District Court erred because the only enforceable decree for the Teton River is the *Perry* Decree; therefore, the District Court is authorized to direct the Water Commissioner to administer water according to the terms of the *Perry* Decree only. The Joint Objectors counter that the District Court properly enforced the provisions of the modified temporary preliminary decree for Basin 41O because that decree supersedes the *Perry* Decree. Both Eldorado and the Joint Objectors rely on provisions of the Montana Water Use Act in support of their arguments.

¶18   It is well-established that "statutes should be construed according to the plain meaning of the language used therein." *Fellows I*, ¶ 21 (quoting *State v. Price*, 2002 MT 229, ¶ 47, 311 Mont. 439, 57 P.3d 42) (internal quotations omitted). Furthermore, a statute "must be read as a whole, and its terms should not be isolated from the context in which they were used by the Legislature." *Fellows I*, ¶ 21 (quoting *Price*, ¶ 47) (internal quotations omitted). We accordingly must interpret a statute "as a part of a whole

statutory scheme and construe it so as to forward the purpose of that scheme." *Stokes v. Mont. Thirteenth Judicial Dist. Ct.*, 2011 MT 182, ¶ 15, 361 Mont. 279, 259 P.3d 754 (quoting *Wright v. Ace Am. Ins. Co.*, 2011 MT 43, ¶ 24, 359 Mont. 332, 249 P.3d 485) (internal quotations omitted).

¶19 While Montana's Constitution recognizes and confirms "existing rights to the use of any waters for any useful or beneficial purpose," Mont. Const. art. IX, § 3(1), it requires also that the Legislature "provide for the administration, control, and regulation of water rights" and "establish a system of centralized records," Mont. Const. art. IX, § 3(4). In implementing this constitutional mandate, the Legislature created the Water Court and granted it exclusive jurisdiction over "all matters relating to the determination of existing water rights within the boundaries of the state of Montana." Section 3-7-224(2), MCA. The Legislature correspondingly granted jurisdiction to district courts to enforce the provisions of water rights decrees and to supervise the distribution of adjudicated water. Title 3, Ch. 7, Pt. 2, MCA; Title 85, Ch. 2, MCA. The Legislature therefore has established a statutory scheme for water rights in which the Water Court is responsible for interpreting and determining the nature and extent of existing water rights while the district courts are responsible for supervising the distribution of water as adjudicated by the Water Court and for enforcing water rights decrees. *In re Deadman's Basin Water Users Ass'n*, 2002 MT 15, ¶ 15, 308 Mont. 168, 40 P.3d 387. One of the Legislature's purposes in implementing this statutory scheme was "to quantify the many

10

water users' rights in Montana's water and to speed up decisions on those water rights." *Hill v. Merrimac Cattle Co.*, 211 Mont. 479, 489, 687 P.2d 59, 65 (1984).

¶20 Under Section 85-2-406(1), MCA, a district court's supervisory authority over the distribution of adjudicated water "includes the supervision of all water commissioners." *See also Luppold v. Lewis*, 172 Mont. 280, 287, 563 P.2d 538, 542 (1977) (concluding that in order to "achieve a uniform method of [water] distribution, the instructions given by the district court must be binding upon the office of water commissioner"). In effectuating its supervisory authority, "[a] district court may order the distribution of water pursuant to a district court decree entered prior to July 1, 1973, until an enforceable decree is entered under part 2 of this chapter." Section 85-2-406(2)(a), MCA. The District Court, therefore, had the authority to order Water Commissioner Hoge to distribute water pursuant to the *Perry* Decree—a district court decree entered prior to July 1, 1973—*until* an enforceable decree was entered under Part 2 of Title 85, Chapter 2, MCA.

¶21 Part 2 of Title 85, Chapter 2, MCA, provides that the Water Court "may issue a temporary preliminary decree . . . if the temporary preliminary decree is necessary for the orderly adjudication or administration of water rights," § 85-2-231(1), MCA, and prescribes procedural requirements for issuing such a decree, §§ 85-2-231(2)-(6), -232, MCA. Once a temporary preliminary decree is issued, interested parties have the right to object to water right claims as they appear in the decree and the Water Court must hold a hearing on those objections. Section 85-2-233, MCA. The determinations made as a

11

result of this objection and hearing process modify the water right claims established in the temporary preliminary decree. *See* § 85-2-234(1), MCA ("The water judge shall . . . on the basis of any hearing that may have been held . . . enter a final decree affirming or modifying the preliminary decree"); W. R. Adj. R. 21(e) ("Following the conclusion of the evidentiary hearing . . . the water court shall review the evidence in the record, render its written decision . . ., and modify the abstract of each applicable claim in accordance with the written decision"). "A temporary preliminary decree . . . or a portion of a temporary preliminary decree . . . as modified after objections and hearings is enforceable and administrable according to its terms." Section 85-2-406(4), MCA. Outside the Water Use Act, the Legislature has confirmed that, "[i]n the absence of any final decree having been issued, the district court having jurisdiction may enforce the provisions of a temporary preliminary decree . . . entered under 85-2-231, as modified by a water judge after objections and hearings." Section 3-7-212, MCA. The plain language of the statutory scheme makes clear that a temporary preliminary decree—as modified after objections and hearings—is an enforceable decree.

¶22 Here, it is undisputed that the Water Court properly issued a temporary preliminary decree for Basin 41O pursuant to § 85-2-231, MCA. The Water Court then conducted a hearing on the objections to Eldorado's water rights as established in the temporary preliminary decree. Based on the objection and hearing process, the Water Court issued an order modifying Eldorado's rights under the decree—which we upheld in *Eldorado I*. *Eldorado I*, ¶ 43. The portion of the temporary preliminary decree

12

pertaining to Eldorado's rights—as modified by the Water Court after objections and hearings—is therefore an enforceable decree under the plain language of the Water Use Act. Sections 85-2-406(2)(a), (4), -231(1), MCA. As such, the District Court has the authority to enforce and administer Eldorado's water rights according to the terms of the modified temporary preliminary decree. Sections 85-2-406(4), 3-7-212, MCA. *See also Eldorado II*, ¶ 28 (concluding that a district court's authority to supervise the distribution of water among appropriators "includes enforcement of Temporary Preliminary and Preliminary Decrees of the Water Court").

¶23 We are unpersuaded by Eldorado's claim that the District Court "improperly strayed" from the *Perry* Decree's terms by instructing the Water Commissioner to impose the volumetric quantification established in the modified temporary preliminary decree. The Water Use Act clearly provides that "[f]or purposes of administering water rights, the provisions of a temporary preliminary decree or a preliminary decree, as modified after objections and hearings, *supersede a claim of existing right* until a final decree is issued." Section 85-2-227(1), MCA (emphasis added). Accordingly, for purposes of administering Eldorado's water rights, the modified temporary preliminary decree supersedes Eldorado's claims of existing right under the *Perry* Decree until a final decree for Basin 41O is issued.[2] We conclude that the District Court correctly instructed the

---

[2] As noted above, the Water Court's order modifying Eldorado's water right claims under the temporary preliminary decree concluded, "Eldorado's rights shall appear in the Final Decree for the Teton River Basin (41O) in accordance with the [amended] abstracts attached hereto." The Water Court therefore made clear that the final decree for Basin 41O would not alter Eldorado's rights further.

13

Water Commissioner to distribute Eldorado's water rights pursuant to the modified portion of the temporary preliminary decree.

**Procedure for enforcing the modified temporary preliminary decree**

¶24   Eldorado argues that the temporary preliminary decree was not enforceable because the appropriators in Basin 41O did not initiate procedures prescribed in § 85-5-101, MCA, for enforcing a decree. Section 85-5-101, MCA, governs the appointment of water commissioners and provides, in pertinent part:

> (1) Whenever the rights of persons to use the waters of any stream . . . or other source of supply have been determined by a decree of a court of competent jurisdiction, including temporary preliminary, preliminary, and final decrees issued by a water judge, it is the duty of the judge of the district court having jurisdiction of the subject matter, upon the application of the owners of at least 15% of the water rights affected by the decree, in the exercise of the judge's discretion, to appoint one or more commissioners. The commissioners have authority to admeasure and distribute to the parties owning water rights in the source affected by the decree the waters to which they are entitled, according to their rights as fixed by the decree and by any certificates, permits, and changes in appropriation right issued under chapter 2 of this title. . . .
>
> (2) When the existing rights of all appropriators from a source or in an area have been determined in a temporary preliminary decree, preliminary decree, or final decree issued under chapter 2 of this title, the judge of the district court may, upon the application by both the department of natural resources and conservation and one or more holders of valid water rights in the source, appoint a water commissioner. The water commissioner shall distribute to the appropriators, from the source or in the area, the water to which they are entitled.

Section 85-5-101(1), (2) MCA. Section 85-5-101, MCA, prescribes procedural requirements for appointing a water commissioner to distribute water according to an applicable water rights decree; the statute does not prescribe procedural requirements for

14

enforcing a temporary preliminary decree when a water commissioner already has been appointed to distribute the water in the source affected by a decree. In fact, the statute explicitly grants the Water Commissioner the

> authority to admeasure and distribute to the parties owning water rights in the source affected by the [*Perry* Decree] the waters to which they are entitled, according to their rights as fixed by the decree and *by any . . . changes in appropriation right issued under chapter 2 of this title*.

Section 85-5-101(1), MCA (emphasis added).

¶25 Here, the District Court appointed Water Commissioner Hoge pursuant to § 85-5-101, MCA, to distribute adjudicated Teton River water. *See Eldorado II*, ¶ 12 (analyzing water distribution from the same stretch of the Teton River at issue here and stating, "The District Court appointed Water Commissioners to administer the water rights decreed in *Perry*, as provided in § 85-5-101, MCA"); *Fellows II*, ¶ 4 (analyzing water distribution from the same stretch of the Teton River at issue here and referring to "the District Court's water commissioner administering the *Perry v. Beattie* water rights pursuant to § 85-5-101, MCA"); *Giese v. Blixrud*, 2012 MT 170, ¶ 3, 365 Mont. 548, 285 P.3d 458 (analyzing water distribution from the same stretch of the Teton River at issue here and stating, "The District Court appointed a Water Commissioner pursuant to § 85-5-101, MCA, to administer the water rights decreed in *Perry*"). Accordingly, the procedural requirements for appointing a water commissioner to distribute water under § 85-5-101, MCA, have been met.

¶26 Although Water Commissioner Hoge was appointed to distribute water pursuant to the *Perry* Decree, it is Water Commissioner Hoge's "duty to admeasure and distribute"

15

water to appropriators "in the same manner and under the same rules as decreed water rights are admeasured and distributed." Section 85-5-105, MCA. *Accord* § 85-5-101(1), MCA (the Water Commissioner has the "authority to admeasure and distribute to the parties owning water rights in the source affected by the decree the waters to which they are entitled, according to their rights as fixed . . . by any . . . changes in appropriation right issued under chapter 2 of this title"). As stated above, the Water Use Act makes clear that, "[f]or purposes of administering [Eldorado's] water rights, the provisions of [Basin 41O's] temporary preliminary decree . . . as modified after objections and hearings, supersede [Eldorado's] claim of existing right" under the *Perry* Decree. Section 85-2-227(1), MCA. Therefore, it is Water Commissioner Hoge's duty to admeasure and distribute Eldorado's water rights according to the provisions of the modified temporary preliminary decree insofar as it supersedes the *Perry* Decree.[3]

¶27 We find no support for Eldorado's additional procedural arguments under § 85-2-406(4), MCA, and W. R. Adj. R. 31, both of which apply in the commencement of an action to enforce a Water Court decree. Again, the District Court already had appointed a water commissioner to distribute water pursuant to the applicable decree—and the decree applicable to Eldorado's rights is the modified temporary preliminary decree. Section

---

[3] Eldorado's argument that the Water Commissioner appointed under the *Perry* Decree can only distribute water pursuant to that decree is undermined by the fact that, historically, the Water Commissioner apparently has distributed water to appropriators whose water rights were not subject to the *Perry* Decree. Appellee's Response Brief 14, *Teton Co-Op Canal Co.* (No. DA 15-0136) (noting testimony from the Water Commissioner appointed to distribute water under the *Perry* Decree "that [Teton Cooperative Reservoir Company's] water right was administered and distributed by the district court in spite of the fact that [Teton Cooperative Reservoir Company's] water right was not decreed in Perry v. Beattie").

16

85-2-227(1), MCA. Moreover, Water Commissioner Hoge had the authority to distribute Eldorado's water rights "according to their rights as fixed . . . by any . . . changes in appropriation right issued under chapter 2 of this title." Section 85-5-101, MCA.

¶28 Eldorado's interpretation of the applicable statutes is contrary "to the plain meaning of the language used therein." *Fellows I*, ¶ 21. Moreover, such an interpretation conflicts with the "whole statutory scheme" for water rights the Legislature has implemented pursuant to its constitutional mandate. *Stokes*, ¶ 15. Here, the Water Court entered a temporary preliminary decree establishing the water rights in Basin 41O. The Water Court—acting within its exclusive jurisdiction—then interpreted and determined the nature and extent of Eldorado's existing water rights after objections and hearings. At that point, the provisions of the temporary preliminary decree relating to Eldorado's rights "supersede[d] [Eldorado's] claim of existing right" under the *Perry* Decree, § 85-2-227(1), MCA, and the modified portion of the temporary preliminary decree became "enforceable and administrable according to its terms," § 85-2-406(4), MCA. The District Court—acting within its jurisdiction—then correctly enforced the modified temporary preliminary decree and supervised the distribution of Eldorado's water as adjudicated by the Water Court.

¶29 As stated above, the "whole question" in a dissatisfied water user proceeding under § 85-5-301, MCA, "is whether the water commissioner is distributing water to the respective users according to the applicable decree." *Fellows II*, ¶ 16. Based on the foregoing analysis, we conclude that the District Court correctly directed Water

17

Commissioner Hoge to distribute Eldorado's water rights according to the modified temporary preliminary decree for Basin 41O.

**Due Process**

¶30 Eldorado contends that its due process rights were violated because it was not provided with notice and had no opportunity to be heard prior to the volumetric quantification being enforced. Eldorado "participated in a four-day trial in front of a Water Master" following the objections to its water right claims as established in the temporary preliminary decree. *Eldorado I*, ¶ 7. The Water Master then issued a report "regarding each of Eldorado's claimed water rights." *Eldorado I*, ¶ 8. The Master's report received objections from all parties—including Eldorado. Based on these objections, the Water Court amended the Master's report to include a combined annual volume for Eldorado's claims of 15,000 acre-feet. *Eldorado I*, ¶ 15. Eldorado appealed the Water Court's order to this Court and argued that "the Water Court impermissibly constrained its water rights by quantifying the volume of [its] rights as it did." *Eldorado I*, ¶ 23. We concluded that the Water Court correctly determined the extent of Eldorado's rights and we therefore upheld "the Water Court's findings regarding volume." *Eldorado I*, ¶ 34.

¶31 Once Water Commissioner Hoge informed Eldorado that he had been requested by the Joint Objectors to administer Eldorado's rights by the volumetric quantification, Eldorado sought a stay of the volume quantification order from the Water Court, which the Water Court denied. The Water Court's order denying the stay concluded that the

"Water Commissioner is subject to direction by the local district court judge. Future enforcement of the 15,000 acre foot limit will be pursuant to the district court's authority to administer water rights." As detailed above, the Water Court's imposition of the volumetric quantification modified the temporary preliminary decree, and the District Court accordingly had authority to enforce the volumetric quantification. Eldorado exercised its statutory right to file a dissatisfied water user complaint and was heard on its complaint.

¶32 "Under both federal and state jurisprudence the requirements for procedural due process are (1) notice, and (2) opportunity for a hearing appropriate to the nature of the case." *Montanans for Justice v. State*, 2006 MT 277, ¶ 30, 334 Mont. 237, 146 P.3d 759 (citations omitted). These requirements "are 'flexible' and are adapted by the courts to meet the procedural protections demanded by the specific situation." *Montanans for Justice*, ¶ 30 (citation omitted). Here, Eldorado participated in every step of the process that resulted in the establishment of its existing water rights under the modified temporary preliminary decree. We conclude that Eldorado had adequate notice and an opportunity to be heard before the volumetric quantification was enforced.

## CONCLUSION

¶33 We affirm the District Court's order denying Eldorado's dissatisfied water user complaint.

/S/ BETH BAKER

19

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT