IN THE SUPREME COURT OF THE STATE OF MONTANA

FILED

FEB 0 7 2002

ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

IN RE THE PETITION OF           )
                                        )

DANA M. CULVER,             )
                                        )      ORDER

Petitioner.               )

Before us is Petitioner Dana M. Culver's request for waiver of the Rules for Admission to the State Bar of Montana. Specifically, Ms. Culver requests a waiver of Section I(B) of the Rules for Admission to the State Bar of Montana. Section I(B) provides that a student or an attorney applicant "must have a Juris Doctor or equivalent degree from a law school accredited by the American Bar Association at the time of graduation[.]"

Ms. Culver is a 2000 graduate of the University of West Los Angeles School of Law ("UWLA"), located in Inglewood, California. Ms. Culver contends that we should not rely strictly on the American Bar Association ("ABA") accreditation standards in determining which law school graduates should have the opportunity to sit for the Montana Bar Examination. While UWLA is not accredited by the ABA, Ms. Culver states that UWLA is accredited by the State Bar of California and regionally accredited by the Western Association of Schools and Colleges ("WASC"). Further, Ms. Culver argues that if the Montana Bar Examination is dispositive of an applicant's skills and abilities, she should be afforded an opportunity to sit for said examination and demonstrate that she can meet the standards of practice in a profession for which she has prepared for over three years.

In support of Ms. Culver's petition, Anne E. Arvin, the Acting Dean of UWLA, submitted a letter stating that UWLA is required to comply with rigoious rules and regulations regarding its admissions, curriculum, faculty, financial integrity, library, and scholastic standards to maintain accreditation by the State Bar of California and WASC. In so doing, UWLA annually prepares reports and hosts on-site visits. In addition, Ms. Arvin states that UWLA's accreditation by the State Bar of California provides UWLA's graduates the opportunity to sit for the California Bar Examination. Ms. Arvin indicates that graduates

of UWLA who have sat for the California Bar Examination have a cumulative bar passage rate of approximately 70%. Moreover, Ms. Arvin contends that graduates of UWLA are "well-prepared" for the practice of law, as UWLA combines the traditional law school curriculum taught by full-time professors using the Socratic method with varied elective course offerings and practical courses taught by practitioners working in specialized areas of law.

Ms. Arvin further explains that UWLA has "consciously chosen not to pursue ABA-approval primarily because of the strict regulations the ABA imposes regarding the allocation of resources." Ms. Arvin maintains that UWLA's "freedom from ABA rules dictating the allocation of resources allows UWLA to keep tuition costs low and to commit all the resources necessary to ensure that our graduates achieve commendable bar passage rates."

In response to Ms. Culver's petition, the Montana Board of Bar Examiners ("the Board") provided comments for our review in this matter. The Board recommends that we deny Ms. Culver's petition. The Board notes that its comments in this matter are not offered as a party adverse to Ms. Culver, but rather as a "commission that has gained expertise over the years in the field of bar admissions."

First, the Board submits that we should not grant waivers in individual cases unless an applicant presents an exceptional circumstance in which a hardship not anticipated when the rule was adopted will be suffered, or in which the applicant will suffer a hardship that "he or she cannot be fairly charged with bearing." Otherwise, the Board contends we "will run the risk of exceptions by waivers swallowing the rule." The Board asserts that neither circumstance exists in this case. We agree.

The Board points out that the Court was aware of the type of hardship presented by Ms. Culver when it adopted the requirement that an applicant of the Montana Bar be a graduate of an ABA accredited law school since, at the time of the rule's adoption, the Court was aware that all law schools were not accredited by the ABA. However, the Court decided to ensure that members of the Montana Bar possess comparable quality legal educations

obtained from law schools accredited by the ABA, which imposes uniform national standards.

Additionally, as the Board accurately contends, Rule 1 (B) of the Rules for Admission to the State Bar of Montana was in existence at the time Ms. Culver entered law school. Accordingly, Ms. Culver was on notice at the time she entered a non-ABA accredited law school that she would not be allowed to sit for the Montana Bar Examination, nor bar examinations in approximately half the states in the country, if she graduated from such school. While the Court may, "under circumstances it deems sufficient," waive any requirement of the Rules for Admission to the State Bar of Montana, pursuant to section VII(A), we do not deem Ms. Culver's circumstances sufficient to waive Section 1(B) of the Rules for Admission to the State Bar of Montana.

Next, the Board endorses the continued application of Rule l(B) to ensure applicants of the Montana Bar have obtained a quality legal education. The Board contends that neither it nor this Court has the resources or expertise to independently examine the legal education offered by law schools around the country. We agree.

The ABA applies uniform national standards, recognized throughout the country by each state's bar examination commission, focusing exclusively on examining the legal education offered by law schools. However, neither the Board nor this Court is familiar with the accreditation standards of the State Bar of California or of regional accrediting organizations, such as the WASC. Typically, regional accrediting agencies accredit various institutions of education, not merely law schools. Thus, such agencies may not impose the same educational standards as does the ABA, which only reviews the qualityofthe education offered at law schools throughout the country. Moreover, we do not have the expertise or the resources to conduct independent reviews of non-ABA approved law schools to determine which such schools offer the quality legal education we seek to obtain from Montana Bar applicants. Such a review could require on-site inspections of the law schools and continued monitoring compliance ofnumerous scholastic requirements. This is a review that is best handled by the ABA since it is equipped to better examine, pursuant to its

imposition of uniform national standards, the quality of legal educational programs offered by law schools throughout the country.

Further, in response to Justice Trieweiler's Dissent regarding the tuition cost differentials between ABA accredited law schools compared to non-ABA accredited law schools, we note, after examining various law schools' internet websites, that there are numerous ABA accredited law schools located throughout the country which are less expensive than UWLA. For example, tuition and fee costs at UWLA for the 2001-2002 academic year total $14, 260.00 ($13,860.00 for tuition costs and $400.00 for fees). In comparison, the tuition and fees for the 2001-2002 academic year at the following ABA accredited law schools located within California, including: University of California-Los Angeles total $11,156.00 for California residents; University of California-Berkeley total $10,910.50 for California residents; and University of California-Davis total $11,424.00 for California residents. In addition, tuition and fees at the University of Montana for the 2001-2002 academic year total approximately $7,550.00 for Montana residents and $14,142.00 for out-of-state residents. Hence, it appears from examination of the law schools' websites, that Ms. Culver could have obtained a legal education from the before mentioned ABA accredited law schools more economically than UWLA. For the foregoing reasons,

IT IS HEREBY ORDERED that Ms. Culver's Petition for Waiver of the Rules for Admission to the Bar of Montana is hereby DENIED.

The Clerk of Court is directed to mail a copy of this Order to the Administrator of the Montana Board of Bar Examiners, to the Chair of the Montana Board of Bar Examiners, and to Dana M. Culver; P.O. Box 8884, Missoula, Montana 59807.

DATED this 7th day of February, 2002.

_____
Chief Justice

_W. William Leaphart_

**Justices**

Justice W. William Leaphart specially concurring.

In his dissent, Justice Tricweiler argues that there is no evidence that the ABA standards correlate to a quality legal education; rather, he contends the standards increase the costs of education, hamper innovations in legal education, discriminate against working (adjunct) faculty and discriminate against non-traditional and minority students. As he indicates, these arguments have been advanced by the Massachusetts School of Law at Andover (MSL) in its effort to achieve recognition for its graduates.

In fairness to the issues being debated, it should be noted that the ABA has responded to MSL's arguments in various forums around the country, including a brief filed before the Oregon Supreme Court.

In the Oregon matter, the ABA made the following points, amongst others:

Since 1973, the number of ABA-accredited law schools has increased by 19 percent, the number of law students enrolled in J.D. programs at ABA-accredited schools has increased by 27 percent, the number of enrolled minorities has increased by 233 percent, and the number of enrolled women has increased by 250 percent.

The law school curricula have grown more diverse (innovative) as evidenced by the increase in elective credit hours by some 24 percent. The number of foreign, international and comparative law courses has increased by more than 24 percent as well.

As to the allegation that the standards discriminate against adjunct professors, the ABA points out that there has been a dramatic increase in the extent to which ABA-accredited schools have relied on part-time adjuncts, drawn from the ranks of judges and

6

practitioners. Between 1974-75 and 1996-97, the number of part-time teachers at **ABA**-accredited law schools in fact increased from 1,777 to 4,980; an increase of 180 percent as compared to the 70 percent increase in full-time law professors during that same period.

Although our reliance on ABA-accreditation is not the perfect resolution to a difficult problem, it is nonetheless preferable to having this Court, with its limited resources and staff, attempt to make accreditation determinations on a case-by-case basis.

Montana only has one ABA-accredited law school-the University of Montana School of Law in Missoula. Having graduated from that law school and having been involved in the Montana legal community as a lawyer and judge for some 30 years, I can attest that the University of Montana School of Law is a valuable asset to the practicing bar and the citizens of this state. If this Court were to change the requirements so that graduation from an ABA-accredited law school such as the University of Montana School of Law was no longer required, that decision would most certainly have an adverse impact on the legislature's perceived need for and support of the School of Law. I do not favor changing the require-ments for taking the bar examination in such a way that the support for the University of Montana School of Law will be eroded.

W. William Leaphart
Justice

Justice Jim Nelson specially concurring:

I concur in Justice Leaphart's concurrence. While not a graduate of the University of Montana Law School, I consider it to be not only an excellent academic institution but also an important education training resource for the Bench and Bar of this State. I am loathe to take any action that might, either directly or indirectly, send a message to the legislature that the high accreditation standards which the Law School must meet are expendable.

_____
                        Justice

Chief Justice Karla M. Gray joins in the foregoing specially concurring opinion.

_____
                  Chief Justice

8

Justice Terry N. Trieweiler dissents.

I dissent from this Court's order which denies Dana M. Culver's petition for a waiver of the requirement that she graduate from a law school accredited by the American Bar Association in order to sit for the State Bar examination and practice law in the state of Montana. The majority agrees with the Montana Board of Bar Examiners that requiring graduation from an ABA accredited law school is necessary to ensure that applicants to membership in the Montana Bar have a "quality legal education." However, no empirical data has been offered to suggest that the ABA's standards correlate in any way to a quality legal education. What is evident is that the monopoly given to this private trade association to set standards for law schools increases the cost of legal education, burdens new members of the profession with debt that limits their options for professional and public service, hampers innovations in the area of legal education, discriminates against "working faculty" with practical professional experiences to share with their students, and discriminates against non-conventional students and minorities who do not meet the arbitrary admission standards imposed.

With no empirical data to suggest that the ABA standards do anything to further legal education, Dana M. Culver has been denied the opportunity to even apply for admission to the practice of law in Montana and take a test which would demonstrate the extent of her legal knowledge. Aside from the obvious injustice to Culver, what this demonstrates is that even the members of this Court who are known for their open-minded and thoughtful approach to issues will sometimes accept representations from the legal establishment on blind faith with no critical analysis whatsoever.

Dana M. Culver received a Juris Doctorate degree from the University of West Los Angeles in May 2000. UWLA is accredited by the California State Bar and the Western Association of Schools and Colleges.

According to the dean of UWLA,

> The State Bar of California's Committee of Bar Examiners imposes rules that regulate our admissions, curriculum, scholastic standards, library, faculty, governance, and financial integrity. We prepare extensive annual reports and

9

host on-sight visits annually. Our continued compliance with these regulations ensures our graduates' right to sit for the State Bar Examination.

The Westcm Association of Schools and Colleges considers the degree of the school's "student support, finances, physical plant, library and information systems, and faculty." The WASC also visits the campus regularly and has extensive reporting requirements.

According to the law school dean, UWLA has chosen not to pursue ABA approval because doing so would require that it allocate funds to unnecessary resources rather than what it determines are the needs of its students. As an example, the dean notes that,

> [A]n ABA-approved law school must maintain a certain number of volumes in its library depending upon the number of students. While our library exceeds the State Bar-imposed standards and complies with WASC standards, UWLA chooses to make its decisions regarding library acquisitions based upon what will benefit our students. Rather than expending funds to meet an arbitrary standard for the number of volumes in the library, regardless of how often those volumes are used and by whom, we have chosen to use those funds to provide student support services.

The excellent bar passage rate for UWLA students in California is noted in the majority Order. (70%). What the majority's Order omits is that that passage rate compares to 37% for all those who took the same examination.

Dana M. Culver has clearly shown that her legal education qualifies her to at least sit for the Montana State Bar examination regardless of whether that education has received a stamp of approval from the American Bar Association.

However, the impact of the majority's Order is greater than its unjust effect on Dana M. Culver. This Court has recently established committees or commissions to deal with the explosion in pro se litigation and to deal with the reality that all but the most wealthy are denied access to our state's justice system by being denied affordable representation. It's no secret that a substantial factor in the high cost of legal representation is the high cost of legal education. For the 2001-2002 academic year, tuition alone at Yale University Law School is $29,800 and at Stanford, $29,726. Nor is the high cost of legal education limited to this nation's most elite schools. Tuition at John Marshall Law School in Chicago, Illinois, for the same time period was $24,300. The cost at Loyola Marymount in Los Angeles, California,

10

is $25,184.

As a result of the cost of legal education, law students arc graduating from ABA-accredited law schools with debt loads of $50,000 to $100,000. With that kind of debt, and assuming they are among the chosen few, they can go to work for the nation's corporate law firms and sleep in corporate dormitories while pumping out 2000 billable hours a year in order to support one of the nation's last legal pyramid schemes or they can face the crushing burden of that debt for the majority of their legal career which will deny them the opportunity for public service and many worthwhile professional options.

On the other hand, tuition for the same academic year at Massachusetts School of Law, located in Andover, Massachusetts, was $12,300. MSL graduates are permitted to take the bar exam in Massachusetts where lawyers are most familiar with the quality of its education and in the states of New Hampshire, Maine and Wisconsin where the school has been given an opportunity after hearing to have the quality of its education considered. However, MSL is not accredited by the ABA.

The majority notes several ABA-accredited law schools where the tuition for 2001-2002 cost less than the cost of attending the University of West Los Angeles School of Law — a non-accredited school. However, all of the schools cited by the majority are publicly funded universities to which there is limited access. In fact, the California law schools cited by the majority are accessible to only the most gifted students. UWLA is a private institution specializing in legal education for people in the Los Angeles area. Its stated mission is:

> [T]o be a leader in offering legal and paralegal education to men and women from diverse educational, occupational, cultural, ethnic backgrounds, and without regard to age, sexual orientation or disability especially to those who must study part-time, so as to contribute to the democratization of legal community.

The majority's comparison of tuition at the publicly funded law schools it lists to the tuition at UWLA is like comparing apples to oranges.

MSL has been able to hold down the cost of legal education and provide access to legal education to non-traditional students and minorities by using a small core of full time professors augmented by an adjunct faculty who are specialists in their area of practice, by

providing a functional physical plant rather than the type of facilities required by the ABA, by relying on electronic research rather than a large library, and by focusing on its faculties' classroom ability rather than providing extensive time off for research on which the ABA places extensive emphasis but which most often contributes nothing to the improvement of society or our profession. MSL has created an admission system that makes law school accessible to minorities and working-class people by considering all aspects of its applicants' prior academic background, designing its own entrance examination and refusing to use the LSAT exam.

ABA standards, on the other hand, discourage innovation in legal education, contribute to the high cost of education, and deny a legal education to all but the most affluent and traditionally educated applicants.

As examples:

1. Standard 302(f) prohibits any ABA accredited law school from granting credit for or requiring students to attend the bar examination preparation courses. Bar examination preparation courses benefit minority students and those from non-traditional educational backgrounds.

2. Standard 304(c) requires that enrolled students take not fewer than eight credit hours. 304(f) prohibits a student from engaging in more than 20 hours per week of employment. And 304(g) prohibits a law school from granting credit for study by correspondence. All of these restrictions discriminate against low income students.

3. Standard 402 establishes a preference for full time faculty members over adjunct faculty members, defines full time faculty to include legal scholarship but to exclude outside activities other than related to academic interests and then by interpretation establishes student-teacher ratio requirements that give greater weight to full time faculty members than adjunct faculty members. This unrealistic, ivory tower approach to legal education drives up the cost, denies a practical reduction in student-teacher ratios, and worst of all, denies students the opportunity to study with qualified people who have demonstrated expertise in their chosen field of law and can communicate a real life perspective to legal issues which is so essential to success after law school. It's no wonder that most tenure track faculty and

12

their administrators fully support ABA accreditation as the key to perpetuation of their monopoly on legal education.

4. Standard 503 requires that law schools credited by the ABA require applicants to schools accredited by the ABA to take the law school admission test or establish to the satisfaction of the ABA that the test it is using is acceptable. The LSAT and other standardized tests developed by national testing services notoriously discriminate against minorities and others from non-traditional educational backgrounds.

5. Standard 606 establishes extensive but subjective criteria for acceptable law school libraries and specifically prohibits exclusive reliance on one medium such as electronic or print. Among the requirements, pursuant to interpretation 606-6, are "(2) . . . one current annotated code for each state; (3) all published treaties and international agreements of the United States; (4) all published regulations (codified and uncodified) of the federal government...." The standards are arbitrary, in some respects unrelated to legal education, and deny prospective schools the opportunity to provide innovative and effective but less expensive research opportunities for students.

6. Standard 70 1 provides general requirements for law schools' physical facilities but is extremely subjective and places substantial discretion for approval in the ABA. Some of this country's greatest lawyers and jurists studied law in facilities which would never meet with current ABA approval.

There is no empirical nor other objective evidence that any of these criteria contribute to the quality of legal education. They are merely arbitrary standards established to perpetuate traditional notions of who should receive a legal education and traditional notions of full time law faculty who place too much emphasis on producing grain silos full of worthless legal literature every year and not enough emphasis on quality classroom education.

Justice Leaphart, in his concurring opinion, refers to statistics submitted by the ABA in its own defense. There is a reason that self-serving information is not mentioned in this opinion. First, the statistical changes relied on by the ABA are a result of societal changes implemented by individual universities. They are not a result of ABA certification. Second,

13

to the extent they have evolved, it has been in spite of the ABA's certification process, not because of it. Finally, unless compared to statistics in the same categories for non-ABA schools over the same period of time, they are entirely meaningless.

Justice Leaphart's concurring opinion also touts his education received at the University of Montana law school – an ABA-certified institution. While his loyalty to his alma mater is admirable, the fact is that he graduated in 1972, thirty years ago, his educational experience then is irrelevant to the quality of education being provided there at this time, and the school that he graduated from would undoubtedly not be certified by the ABA today for many of the reasons mentioned in this opinion. Furthermore, why the legislature would give a tinker's dam whether we required graduation from an ABA-certified law school as a condition to taking the bar exam is beyond me. We used to allow applicants to take the bar exam without graduation from any law school and that didn't seem to bother the legislature. In fact, the percentage of state funding for the cost of education provided at the University of Montana law school has dramatically decreased since we made graduation from an ABA-certified law school a requirement for admission to the practice of law in Montana.

The majority's rationale for defaulting from its responsibility to the arbitrary standards of this national trade organization (which, by the way, doesn't even include a majority of this country's lawyers) is that this Court is simply not in a position to evaluate the qualifications of every non-accredited school at which an applicant may have been educated. However, there are alternatives for any court which wants to conscientiously consider access to justice rather than just appoint committees which give the appearance of some interest. For example, Massachusetts School of Law has suggested that the non-accredited law schools themselves could apply for recognition by individual state courts rather than the school's graduates, reducing the burden on the court and placing the burden on the schools to demonstrate that they provide an effective legal education to their graduates. Or, as MSL suggests, graduates of a school which is not accredited by the ABA could be permitted to take the state's bar examination if the school is accredited by a federally recognized regional accrediting body. Finally, graduates could be allowed to take this state's bar examination if

they are allowed to take the bar examination in the state where the school is located or, in other words, where the highest court in that state has determined from personal observation and experience that an adequate legal education is being provided to the school's graduates. Apparently, the states of New Hampshire, Maine and Wisconsin have found alternatives to requiring ABA accreditation. Certainly, in the interest of fairness, the members of this Court should be no less up to the challenge.

Our justice system is the cornerstone of a free society. Yet justice will never be available to the great majority of Americans who are among the middle class and poor because they cannot afford legal services and, due to substantial cuts in government funding, those legal services which used to be provided by the government for the poor are a token of what is required. Any solution to this critical problem has to include a radical reconsideration of traditional legal education in this country. It has to consider who has access to that education, what skills are essential to the education, how long it takes to complete the education, and what the necessary cost of that education will be. None of that is possible based on the arbitrary straight jacket in which the American Bar Association, a mere professional trade organization, has placed legal education. By its order today, this Court placates the legal establishment, including the ABA and this country's traditional law faculty, but simply postpones the ultimate day ofreckoning which any thoughtful society will ultimately demand.

For these reasons, I dissent from the majority Order which denies Dana M. Culver permission to sit for the Montana State Bar examination and be admitted to membership in the State Bar of Montana should she successfully complete that examination and satisfy the character and fitness committee of her moral qualifications.

DATED this day of February, 2002.

_____
Justice

Justice Jim Rice dissenting

I respectfully dissent from the Court's order

Culver is a 2000 graduate of the University of West Los Angeles School of Law (UWLA). Although not accredited by the American Bar Association, UWLA is accredited by the Western Association of Schools and Colleges (WASC) and is in compliance with the regulations of the State Bar of California's Committee of Bar Examiners, thus authorizing UWLA graduates to sit for the California Bar examination. UWLA Dean Anne E. Arvin indicates that the WASC standards are rigorous and far-reaching, ensuring educational effectiveness and institutional integrity in a variety of contexts, including governance, student support, finances, physical plant, library, information systems and faculty. UWLA hosts regular on-site visits and complies with extensive reporting requirements.

Culver is a legal assistant to Evonne Smith Wells, who is Montana and Arizona counsel. Wells reports that Culver is an excellent researcher with a firm grasp on many areas of the law, and has effectively analyzed cases and drafted pleadings in Wells' Missoula office. In addition to commending her legal skills, Wells attests to Culver's character and work ethic. Wells further indicates that unforeseeable circumstances that did not exist at the time Culver entered law school have brought Culver to Montana.

I do not dismiss the ABA's process of law school accreditation. However, pursuant to Section VII(A) of the Rules of Admission, I find the circumstances here sufficient to warrant waiver of Section I(B), and would allow Culver, upon completion of all other requirements, to sit for the Montana Bar examination.

_____
                                          Justice

Justice Patricia 0. Cotter joins in the dissent of Justice Rice.

_____
                                          Justice

16

Justice Patricia Cotter dissents

I dissent as well.

I agree with Justice Rice that we need not limit our inquiry, when considering applications such as these, to whether the ABA has accredited the law school from which the applicant has graduated. I have therefore signed his dissent. However, I also agree with most of Justice Trieweiler's comments. I agree in particular with his contention that there are valid, workable and relatively simple alternatives out there by which we could determine whether an applicant has received a suitably comprehensive legal education so as to be qualified to sit for the Montana Bar, without chaining ourselves to the ABA standards.

The ABA standards have arguably served a valuable purpose. However, I simply don't believe the ABA should have the comer on defining what constitutes a suitable legal education for every person who may want to become a Montana lawyer. Nor do I believe that encouraging the exercise of independent judgment on such matters should in any way be construed as an invitation to erode support for the University of Montana School of Law. No one here questions that the University of Montana provides an excellent legal education to its students. Rather, the point is that there are bright and capable law students out there who have not had the ability or good fortune to attend such a quality accredited institution. In my judgment, it is wrong to punish such persons for that misfortune by categorically excluding them from the privilege of practicing law in this state. I therefore dissent.

_____
Justice

17