DA 11-0340

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 169

CHARLES E. FELLOWS, an Individual,

Plaintiff and Appellant,

v.

THE OFFICE OF WATER COMMISSIONER for
the *Perry v. Beattie* Decree Case No. 371,
and all JOHN DOE WATER USERS,

Defendants and Appellees.

APPEAL FROM: District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DV 11-0110
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Peter G. Scott (argued); Gough, Shanahan, Johnson & Waterman, PLLP,
Helena, Montana (for Charles Fellows)

For Appellees:

Michael J. L. Cusick (argued); Attorney at Law, Bozeman, Montana (for
Patrick Saylor, Ottis and Sylvia Bryan and Farmers Cooperative Canal
Company)

Holly Jo Franz (argued); Franz & Driscoll, PLLP, Helena, Montana (for
Teton Cooperative Reservoir Company)

John Bloomquist; Doney, Crowley, Payne. Bloomquist, P.C., Helena,
Montana (for Teton Cooperative Canal Company, Eldorado Cooperative
Canal Company)

David Weaver; Nash, Zimmer, Weaver & Grigsby, PLLC, Bozeman,
Montana (for John E. Peebles and William S. Peebles)

Argued:  May 23, 2012
Submitted:  May 30, 2012
Decided:  August 10, 2012

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Charles E. Fellows appeals from the District Court's order dismissing his complaint. We reverse and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    Fellows owns a water right in Spring Creek near Choteau, Montana, decreed in 1892 in *Sands Cattle and Land Co. v. Jackson*, Case No. 727. He claims that the flow of Spring Creek is or was for many years recharged by water seeping from the natural channel of the Teton River. He claims that the practice of diverting water from the natural channel of the Teton River, implemented by the District Court's water commissioner on the Teton, has adversely affected the water available to satisfy his water right in Spring Creek.

¶3    A portion of the water rights used in the upper reaches of the Teton River was decreed in 1908 in *Perry v. Beattie*, Case No. 371.[1] One of the senior (in time) water rights decreed in *Perry* was a right to a flow rate of 300 miner's inches of water decreed to the Choteau Cattle Company.[2] At the time of the *Perry* decree Choteau Cattle's point of diversion was, and still is, located downstream from a porous gravel section of the Teton riverbed near Choteau, sometimes referred to as the Springhill Reach. At the time of the *Perry* decree and for many years thereafter, Teton River water flowed down its natural channel and through the Springhill Reach to where Choteau Cattle exercised its

---

[1] The decrees in *Sands* and in *Perry* were entered by the Eleventh Judicial District Court for Teton County, which is now in the Ninth Judicial District.
[2] A miner's inch is a method of measuring the flow of water, and 100 inches is equivalent to 2.5 cubic feet of water per second. Section 85-2-103, MCA.

3

water right. In order for Choteau Cattle to exercise its senior right, more than 300 miner's inches of water had to remain in the channel to account for the water that seeped into the ground as the River flowed through the Springhill Reach. Fellows claims that this seepage water recharged Spring Creek and is a source of the water that he uses from Spring Creek.

¶4 In the 1950s or 1960s (the date is not clear and may be as late as the 1970s) the District Court's water commissioner administering the *Perry v. Beattie* water rights pursuant to § 85-5-101, MCA, began diverting Choteau Cattle's 300 miner's inches of water out of the Teton and into the Bateman Ditch, which transports the water around the Springhill Reach before returning it to the natural channel just above Choteau Cattle's point of diversion. In some times of the year no water at all flows through the natural channel of the Teton River because of the diversion through the Bateman Ditch. The Bateman Ditch diversion was implemented without express approval of the District Court and apparently without any other agreement in writing. The Bateman diversion was implemented for the benefit of upstream appropriators with rights junior to Choteau Cattle's right, enabling them to exercise their water rights without having to allow more than 300 inches to flow through the Springhill Reach to arrive at Choteau Cattle's point of diversion. While some of the benefitted users hold rights under the *Perry* decree, the practice also benefits one holder of a non-decreed right. Choteau Cattle does not claim any rights to use the Bateman Ditch and does not claim the Ditch as a point of diversion.

¶5 In February, 2011, Fellows filed a complaint against the water commissioner administering the *Perry v. Beattie* decree. The complaint contained a claim as a

4

dissatisfied water user under § 85-5-301(1), MCA; claims based upon private and public nuisance and negligence; and requests for a writ of prohibition, an injunction and declaratory relief. The District Court ordered that Fellows serve notice of his lawsuit on persons who hold decreed water rights in the Teton River. The District Court subsequently ordered briefing on several issues, including whether Fellows had standing to sue under § 85-5-301(1), MCA, as a dissatisfied water user.

¶6      Fellows claims that diverting the flow of the Teton River before it gets to the gravel section of the riverbed diminishes the flow of Spring Creek and interferes with his Spring Creek water right. He claims that Spring Creek and the Teton River are hydrologically connected via water seepage from the Springhill Reach; that he can prove the connection; that a source of his right is the Teton River; and that his Spring Creek right is senior to many of the rights later decreed in *Perry v. Beattie.* Fellows claims that as a matter of law he has the right to have the flow of the Teton River remain as it was at the time of the *Perry* decree and for many decades thereafter: flowing down the natural channel and through the Springhill Reach. He contends that the water commissioner's practice of diverting the Teton River around the Springhill Reach is contrary to the *Perry* decree, and that it adversely impacts his Spring Creek water right. He contends that there is no justification for diverting Choteau Cattle's water down the Bateman Ditch, especially since Choteau Cattle expressly disclaimed any right to use the Ditch to satisfy its water right.

¶7      Montana has a statewide process for the adjudication of water rights pursuant to Art. IX, sec. 3(4) of the Montana Constitution. *Montana Trout Unlimited v. Beaverhead*

5

*Water Co.*, 2011 MT 151, ¶ 2, 361 Mont. 77, 255 P.3d 179.  The Legislature created a Water Court presided over by a chief and an associate water judge with jurisdiction that encompasses "all matters relating to the determination of existing water rights within the boundaries of the state of Montana."  Section 3-7-224(2), MCA.  The law also provides for four water divisions presided over by specifically designated water judges with authority to adjudicate existing water rights.  Section 3-7-101, MCA.  Finally, state district court judges have jurisdiction over certain cases that involve existing water rights and supervision of the distribution of water.  Title 3, Ch. 7, Pt. 2, MCA; Title 85, Ch. 2, MCA.  The rights of all appropriators in the Teton River and Spring Creek are currently being adjudicated by the Montana Water Court.  The Water Court has issued temporary preliminary decrees but not all objections have been resolved and the Water Court has not issued a final decree.

¶8      After briefing and oral argument the District Court dismissed Fellows' complaint on the ground that it failed to state a claim upon which relief could be granted under M. R. Civ. P. 12(b)(6).  The District Court held that Fellows lacked standing to bring an action under § 85-5-301(1), MCA, as a dissatisfied water user unless he could prove a hydrological connection between Spring Creek and the Teton River.  Further, the District Court determined that while Fellows had prayed for a declaratory judgment, no such declaration could be issued without first determining the Spring Creek-Teton River connectivity issue. The District Court determined that its authority under § 85-5-301(1), MCA, was limited to enforcing the *Perry* decree, and that it did not have authority to determine Fellows' Spring Creek right.  However, the District Court did recognize that it

6

could protect Fellows' interests by granting "relief appropriate and necessary" pending final adjudication of all the rights by the Water Court.

¶9 The District Court determined that Fellows was not entitled to a writ of prohibition to halt the water commissioner from diverting the Choteau Cattle water through the Bateman Ditch. The Bateman diversion, the court determined, is a way to maximize the beneficial use of Teton River water for appropriators who hold rights under the *Perry* decree and is therefore not unlawful. In addition, the court determined that Fellows had an adequate remedy at law under § 85-2-406(2), MCA, which allows a district court to certify certain water distribution controversies to the Water Court. Finally, the court determined that all of Fellows' other causes of action could only be addressed if he brought an action under § 85-2-406(2), MCA, and that the water commissioner was entitled to judicial immunity under § 2-9-112, MCA.

¶10 The District Court held that Fellows could file an amended complaint requesting certification to the Water Court under § 85-2-406(2), MCA, and held in abeyance the claims for injunctive or declaratory relief pending anticipated action by the Water Court under that statute. Fellows did not file an amended complaint, but instead appealed to this Court.

**STANDARD OF REVIEW**

¶11 A district court's decision dismissing a complaint under M. R. Civ. P. 12(b)(6) is reviewed as an issue of law to determine whether it is correct. This Court will construe the complaint in a light most favorable to the plaintiff, deeming all factual allegations to be true. This Court will affirm the dismissal only if it finds that the plaintiff is not

7

entitled to relief under any set of facts that could be proven in support of the claims. *Missoula YWCA v. Bard*, 1999 MT 177, ¶ 3, 295 Mont. 260, 983 P.2d 933; *Hauschulz v. Michael Law Firm*, 2001 MT 160, ¶¶ 7-8, 306 Mont. 102, 30 P.3d 357; *Meagher v. Butte-Silver Bow County*, 2007 MT 129, ¶¶13-14, 337 Mont. 339, 160 P.3d 552.

## DISCUSSION

¶12 The issue on appeal is whether the District Court properly applied § 85-5-301(1), MCA, and dismissed Fellows' complaint for failure to state a claim upon which relief can be granted.

¶13 Section 85-5-301, MCA, provides, in part, that "[a] person owning or using any of the waters of the stream . . . who is dissatisfied with the method of distribution of the waters of the stream . . . by the water commissioner . . . and who claims to be entitled to more water than the person is receiving . . . may file a written complaint, duly verified, setting forth the facts of the claim." This statute, designed to be the "most practical and effective means yet devised" to effectuate water right decrees, *Quigley v. McIntosh*, 110 Mont. 495, 508, 103 P.2d 1067, 1073 (1940), forms a basis for Fellows' complaint.

¶14 The District Court determined that Fellows' standing to bring a dissatisfied water user complaint under § 85-5-301(1), MCA, was dependent upon his being able to prove a hydrological connection between the Teton River and Spring Creek. The court in turn determined that Fellows had to initiate a separate proceeding under § 85-2-406, MCA, so that the connectivity issue could be determined by the Water Court.

¶15 Under current Montana law the jurisdiction to determine existing water rights rests exclusively with the Water Court. *Mildenberger v. Galbraith*, 249 Mont. 161, 166, 815

8

P.2d 130, 134 (1991). A district court may supervise the distribution of rights to the use of water which have previously been decreed by a district court. *Baker Ditch Co. v. District Court*, 251 Mont. 251, 255, 824 P.2d 260, 262 (1992). However, a district court currently lacks authority to adjudicate water rights. *In re Petition of the Deadman's Basin Water Users Association*, 2002 MT 15, ¶ 15, 308 Mont. 168, 40 P.3d 387.

¶16 A long line of cases has constrained the application of § 85-5-301, MCA, to disputes arising within the confines of a prior water rights decree entered by a district court. The only purpose of a dissatisfied water user petition is to provide a summary proceeding to enforce rights determined under a prior decree. *In re Kelly*, 2010 MT 14, ¶ 31, 355 Mont. 86, 224 P.3d 640. The "whole question" in such a proceeding is whether the water commissioner is distributing water to the respective users according to the applicable decree. *Quigley v. McIntosh*, 110 Mont. 495, 499-500, 103 P.2d 1067, 1069 (1940); *Allen v. Nichols*, 143 Mont. 486, 495, 392 P.2d 82, 86 (1964). A district court hearing a dissatisfied water user's complaint may not adjudicate water rights, but may only enforce rights determined in a prior decree. *Luppold v. Lewis*, 172 Mont. 280, 288-289, 563 P.2d 538, 542 (1977). Therefore, the duty of the water commissioner appointed under the *Perry* decree is to administer the rights determined in that decree, and a petition filed under § 85-5-301, MCA, complaining of the actions of the commissioner is limited to consideration of the rights under that decree. Since Fellows does not derive his Spring Creek water right from the *Perry* decree, § 85-5-301, MCA, does not provide a mechanism for him to complain of the actions of the water commissioner under the *Perry* decree.

9

¶17 Fellows also requested that the District Court issue relief in the form of a declaratory judgment under §§ 27-8-101, et seq., MCA. The District Court declined to consider that relief, however, unless Fellows first obtained certification to the Water Court for a determination of his water right in Spring Creek. However, as the District Court emphasized, the issue of whether there is a hydrological connection between the Teton River and Spring Creek is at the heart of this dispute. The declaratory judgment statutes serve a remedial purpose, and are to be liberally construed to settle and afford "relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Section 27-8-102, MCA. A district court may declare "rights, status, and other legal relations whether or not further relief is or could be claimed." Section 27-8-201, MCA. Declaratory judgment relief has been invoked in cases involving water rights. *Mont. DNRC v. Intake Water Co.*, 171 Mont. 416, 558 P.2d 1110 (1977) (action seeking declaration that appropriator did not have a valid water right); *McDonald v. State*, 220 Mont. 519, 722 P.2d 598 (1986) (original proceeding seeking declaratory judgment as to the constitutionality of statutes requiring quantification of water rights); and *Mustang Holdings, LLC v. Zaveta*, 2006 MT 234, 333 Mont. 471, 143 P.3d 456 (action seeking declaratory judgment as to whether a party had the right to divert water through a ditch).

¶18 The District Court disposed of Fellows' complaint on a motion to dismiss under M. R. Civ. P. 12(b)(6). It is well established that in considering a motion to dismiss the district court must construe the complaint in a light most favorable to the plaintiff and must deem all factual allegations of the complaint to be true. Dismissal for failure to state a claim is proper only if the district court finds that the plaintiff is not entitled to

10

relief under any set of facts that could be proven in support of the claims. *Missoula YWCA*, ¶ 3; *Hauschulz*, ¶¶ 7-8; *Meagher*, ¶¶13-14. In this case Fellows' verified complaint alleged that the flow of the Teton River through the Springhill Reach is the source for his decreed water rights on Spring Creek; that the decree in the *Perry* case requires that water be delivered to downstream appropriators through the natural channel of the Teton River, including the Springhill Reach; that long after the decree in the *Perry* case the water commissioner altered the method of water distribution on the Teton River by bypassing and de-watering the Springhill Reach; and that this had impaired his senior decreed water rights.

¶19 The allegations of Fellows' complaint, which at this stage are presumed to be true, are clearly sufficient to invoke the District Court's power to issue a declaratory ruling. While Fellows' ability to prove a hydrological connection between the Teton River and Spring Creek is clearly a lynchpin of his case, he is not required to prove that connection to prevent his complaint from being dismissed for failure to state a claim under M. R. Civ. P. 12(b)(6).

¶20 Montana law recognizes that ground water and surface water may in fact be connected. *Montana Trout Unlimited v. DNRC*, 2006 MT 72, ¶ 9, 331 Mont 483, 133 P.3d 224. The District Court determined that Fellows' standing was a threshold issue that depended on the existence of a Teton River-Spring Creek connectivity, but then dismissed the complaint without giving him the chance to prove connectivity and without assuming the truth of his allegations.

11

¶21 Fellows' factual allegations and his request for a declaratory ruling are sufficient to invoke the District Court's power to issue a declaratory ruling on the issue of connectivity. The Fellows right was not part of the 1908 adjudication in *Perry*, but was decreed in the 1892 *Sands* case. His right to Spring Creek water cannot be automatically subordinated to rights decreed in *Perry* and we agree with the District Court that if Fellows can prove hydrological connectivity between Spring Creek and the Teton River, then the next step should be certification to the chief water judge under § 85-2-406(2)(b), MCA.

¶22 The District Court is reversed and this case is remanded for further proceedings consistent with this opinion.


/S/ MIKE McGRATH


We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ JIM RICE