DA 13-0174

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 380

CHRISTOPHER R. KENCK,

       Plaintiff and Appellant,

  v.

STATE OF MONTANA, CHILD SUPPORT
ENFORCEMENT DIVISION and LORI
FLEMING, an individual, and JOHN DOES 1-5,

       Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District, In and For the County of Yellowstone, Cause No. DV 11-0650 Honorable Gregory R. Todd, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          J. Gregory Tomicich; Tomicich Law Office; Billings, Montana

      For Appellees:

          Timothy C. Fox, Montana Attorney General; Thomas G. Bowe, Assistant Attorney General; Helena, Montana

Submitted on Briefs:  November 5, 2013
Decided:  December 31, 2013

Filed:

_____

                    Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Christopher Kenck appeals the Order of the Thirteenth Judicial District Court dismissing his action against the State of Montana, Child Support Enforcement Division (CSED). We affirm and remand for further proceedings.

¶2 After years of complying with his monthly child support obligation, Kenck, who was serving in the U. S. military, agreed via counsel to an increase in his monthly support obligation. The increase was applied retroactively to the date the request for an increase was filed by the child's mother, creating an administrative arrearage of several months in Kenck's account. Kenck arranged to pay off the arrearage with increased deductions from his military pay. Nonetheless, CSED reported the arrearage to the national consumer credit reporting agencies.

¶3 Upon completing active duty with the U. S. Air Force (USAF), Kenck was provisionally hired by U. S. Department of Homeland Security but the offer of employment was withdrawn when TSA discovered the credit report indicating that Kenck's child support was delinquent. After other prospective law enforcement employers cited the same reason for rejecting him as an otherwise qualified candidate, Kenck filed this action against CSED and Lori Fleming, regional manager for the Billings CSED office, for its erroneous report to the credit agencies. The District Court dismissed all claims against CSED and Fleming under M. R. Civ. P. 12(b)(6) (Rule 12(b)(6)). Kenck appeals.

## ISSUES

¶4 A restatement of the dispositive issue on appeal is:

2

¶5    Did the District Court err in dismissing Kenck's claims against CSED and Fleming?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6    Christopher Kenck is the biological father of a child born in May 2003. Shortly after the child's birth, Kenck joined the United States Air Force and regularly sent money to the child's mother for support. In June 2004, the couple split and in September 2004, CSED established a child support account for Kenck and ordered him to pay $186/month in child support. Kenck agreed and provided CSED with the necessary information to allow the military to withhold child support payments from his military wages. This State-calculated monthly support amount was slightly higher than the amount Kenck had been paying; therefore, the retroactive application of the new amount caused an administrative arrearage that Kenck paid. Kenck also put the child on his military medical insurance plan. There is nothing in the record to suggest Kenck was ever late with his payments. To the contrary, he has consistently provided monthly support for his child—even at times when he was not under a State order.

¶7    In March 2008, the child's mother petitioned the State for a child support increase. Kenck, who was serving in Iraq at the time, was not notified of the requested increase in support until a later date. However, in August 2008 when Kenck was stateside on leave, he went to the Billings CSED office and, without objection, accepted service of the modification request. Following an October 2008 administrative hearing in which Kenck was represented by counsel, CSED raised Kenck's monthly child support obligation from $186/month to $458/month. The State retroactively applied the increased obligation

3

which resulted in an administrative arrearage of approximately $1,200 in Kenck's child support account. Again Kenck paid the increased monthly payments directly from his military wages. He also agreed to pay off the administrative arrearage in accordance with State law by paying 1/24 of the debt per month.[1] There was no discussion at the administrative hearing of CSED notifying the national credit reporting agencies of the arrearage. However, CSED subsequently reported the arrearage in his account to the consumer credit reporting agencies, listing it as a bad debt and delinquent child support. Kenck acknowledges that around this time, he received a notice letter from CSED that he did not fully understand, but he did not follow up with the agency.

¶8 Kenck completed his active duty service on July 7, 2009, and moved to Washington, where he joined the Washington Air National Guard. Shortly thereafter he obtained a copy of his credit report and discovered the entry of the child support delinquency. Kenck contacted CSED and verbally contested the accuracy of the delinquency reporting. Subsequently, and with the assistance of his counsel, he obtained a letter from CSED's Legal Services Bureau Chief dated August 3, 2009. In this letter, CSED's attorney explained that Kenck's arrearage "arose by reason of law" and that Kenck had "faithfully" paid his child support obligation. The letter further stated that the arrearage "was not caused by any failure of Mr. Kenck to pay his ordered child support obligation," and that Kenck was "retiring" the arrearage by monthly payments of 1/24th of the total "in accordance with Montana law." CSED's legal counsel also agreed to take

---

[1] Section 40-5-309(1)(a)(i)(B), MCA, requires that an outstanding child support debt be paid within 24 months.

steps in an effort to have the delinquency removed from the consumer reporting agencies' records. Either no such steps were taken or they were unsuccessful.

¶9 Subsequently, believing the matter was resolved, Kenck sought employment with U. S. Department of Homeland Security as a TSA agent in Washington. After passing the necessary tests and being provisionally hired, TSA withdrew its offer of employment based upon a credit report indicating that Kenck's child support was in arrears. He was also told by recruiters from the Seattle Police Department and other local agencies that delinquent child support was an automatic disqualification for employment. Kenck subsequently filed this action against CSED and CSED's Billings' office regional manager, Lori Fleming.

¶10 Kenck asserted both federal and state claims against CSED and Fleming. He argued that the agency's reporting to the credit agencies of an arrearage that arose through no fault of his own and resulted in the denial of employment opportunities with governmental law enforcement agencies was a violation of his federal rights under 42 U.S.C. § 1983. He also claimed CSED violated certain mandatory provisions of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. §§ 501-597.

¶11 Kenck further alleged under common law that CSED defamed him, acted with malice, invaded his privacy by placing his child support payment history in a false light, and intentionally and negligently inflicted emotional distress upon him. He also claimed CSED violated his State constitutional rights provided in Article II, sections 10, 17 and 35.

5

¶12 The District Court, in an Order dated December 27, 2012, dismissed Fleming from the action holding that she had statutory immunity from liability arising from actions taken during the course and scope of her employment. Relying on Rule 12(b)(6), the court also dismissed all of Kenck's claims against CSED with the exception of his claim that CSED violated the SCRA. The court requested additional briefing on this issue and then dismissed it as well. Kenck appeals these rulings.

## STANDARD OF REVIEW

¶13 A district court's decision to dismiss a complaint under Rule 12(b)(6) is reviewed as an issue of law to determine whether it is correct. This Court will construe the complaint in a light most favorable to the plaintiff, deeming all factual allegations to be true. This Court will affirm the dismissal only if it finds that the plaintiff is not entitled to relief under any set of facts that could be proven in support of the claims. *Fellows v. Office of Water Comm'r*, 2012 MT 169, ¶ 11, 365 Mont. 540, 285 P.3d 448.

## DISCUSSION

¶14 *Did the District Court err in dismissing Kenck's claims against CSED and Fleming?*

¶15 This case is complicated and confounded by the interplay of state and federal child support statues and guidelines, state and federal credit reporting statutes, and lastly by the fact that Kenck was serving in the United States military at the time his arrearage was reported by CSED to credit reporting agencies, thus invoking the provisions of the SCRA.

¶16   On appeal Kenck asserts the District Court erred in concluding: (1) he was "delinquent" in his child support obligation; (2) he had no private right of action for violations under SCRA; (3) that violation of the SCRA was not a violation of a federal right for purposes of 42 U.S.C. § 1983; and (4) his state constitutional claims were preempted by the Fair Credit Reporting Act (FCRA).  Kenck also argues that the District Court erred by not viewing his Complaint in a manner most favorable to him as required by Rule 12(b)(6).

"Delinquent" child support

¶17   Kenck argued to the District Court and to this Court on appeal that despite the existence of an administrative arrearage, he was not delinquent in his child support. Consequently, CSED should not have reported him to the credit reporting agencies or seized his income tax refund.  The District Court concluded, based upon applicable federal statutes, that Kenck's administrative arrearage constituted "overdue support" and CSED was authorized to report this to the credit reporting agencies under 15 U.S.C. § 1681s-1 and § 40-5-261, MCA.

¶18   As noted above, when CSED increased Kenck's monthly child support obligation, it imposed the increased obligation retroactively creating an immediate administrative arrearage of approximately $1,200 in Kenck's account.  Kenck acknowledges the agency's right to impose the increased amount retroactively under § 40-5-226(3)(c), MCA.  Kenck also does not dispute that CSED has the authority to report child support account information to national consumer reporting agencies.  Specifically, § 40-5-261(1), MCA, authorizes the department to "make information about a support debt

7

available to consumer reporting agencies . . . upon request." Kenck argues, however, that an administrative arrearage is not a delinquency. He maintains that by voluntarily reporting his arrearage to credit agencies—which arrearage was construed by prospective employers as a delinquency—CSED effectively destroyed his prospects of being employed by any governmental agencies.

¶19 As the District Court correctly observed,

> Montana's Child Support Enforcement Program is rooted in federal law, specifically Subchapter IV, Part D of the Social Security Act. 42 U.S.C. § 666(a)(7)(A) specifically requires the State to periodically report the names of noncustodial parents who are delinquent in the payment of their support and the amount for which they are overdue.

CSED is therefore obligated "to report periodically to consumer reporting agencies . . . the name of any noncustodial parent who is *delinquent* in the payment of support, and the amount of *overdue* support owed by such parent." 42 U.S.C. § 666(a)(7)(A) (emphasis added). Moreover, under 15 U.S.C. § 1681s-1 of the FCRA, a credit bureau is required to include in credit reports information about "overdue" child support furnished by a State child support enforcement agency. There is thus no question that CSED has the authority and the obligation to report child support delinquencies and that credit bureaus are required to report such delinquencies. However, the question remains whether Kenck's administrative arrearage constitutes a delinquency or "overdue" child support.

¶20 While Montana's child support enforcement statutes do address the concept of an "arrearage," (*see e.g.*, § 40-5-271(3)(c)(i), MCA, and § 40-5-601(6) and (7)(a), MCA), the statutes do not define this term. The term "delinquency" is defined in § 40-5-701(2), MCA, as "a support debt or support obligation due under a support order in an amount

8

greater than or equal to 6 months' support payments as of the date of service of a notice of intent to suspend a license." However, this definition is pinned to proceedings that are commenced to suspend a license for nonsupport. Moreover, the federal statutes set forth in the Social Security Act that govern child support payments provide no definition of "delinquent" or "delinquency." There is thus surprisingly little statutory guidance on whether an arrearage created by imposition of a retroactive increase in support should properly be construed or reported as overdue child support or a child support delinquency, nor has this Court squarely addressed the issue. We therefore look first to a Montana District Court decision and then to federal and other state jurisdictions for guidance.

¶21    In *Albright v. Bemis*, 1996 Mont. Dist. LEXIS 732, Bemis was ordered by the State of Idaho in September 1994 to pay $166/month in "current" monthly child support beginning December 1993. The Idaho court also ordered Bemis to pay an additional $17,124 ("retroactive child support") in back child support for the period of time between the child's birth in December 1983 and December 1993 when the "current" obligation was established.[2] *Albright*, 1996 Mont. Dist. LEXIS 732.

¶22    In February 1995, the Montana district court ordered that Bemis pay his current child support and a portion of his retroactive child support through monthly income deductions. The court determined that Bemis should pay 25% of his monthly income toward child support—$166 would be applied to his current obligation and the balance of the amount paid would be applied to the retroactive amount due. Albright challenged this

_____

[2] The parties disputed whether the father knew of the child's birth before July 1989.

9

ruling, arguing that Bemis should pay $166/month for current child support and $713.50/month in "delinquent child support" in order to pay the delinquent debt in full within 24 months in accordance with § 40-5-309(1)(a), MCA (1995). The district court disagreed, stating:

> [T]his Court determines that [Albright] mis-characterized in her Petition the $ 17,124.00 child support for 1983 through 1993 as "delinquent" or "past due" child support, when in fact the amount represents "retroactive" child support dating back to the time of the child's birth in December 1983. . . . Prior to the date of the Idaho judgment, there was no Court ordered child support obligation for the years 1983 through 1993, and [Albright's] characterization of the judgment amount of $ 17,124.00 as "delinquent" or "past due" child support is neither factually, nor legally, sustainable. Rather, the judgment amount of $ 17,124.00 represents "retroactive" child support which did not become due and payable until awarded by the Idaho Court in September 1994, and Sec. 40-5-309(1)(a)(ii), MCA, mandating that any delinquent child support must be paid off within two years does not apply.

*Albright*, 1996 Mont. Dist. LEXIS 732. *Albright* is instructive because the court recognized a distinction between "delinquent" and "retroactive" arrearages. Kenck, unlike Bemis, agreed to and did pay off his "retroactive" arrearages within 24 months and he does not appeal CSED's imposition of the deadline set forth in § 40-5-309, MCA.

¶23 Other courts have recognized a similar distinction between "delinquent" and "arrearage." In *Gladysz v. King*, 658 N.E.2d 309 (Ohio App. 2nd Dist. 1995), *superceded by statute as stated in Turner v. Burley*, 2005 Ohio App. LEXIS 723 (Ohio App. 10th Dist. 2005), the Ohio court concluded:

> We believe that CSEA's [Child Support Enforcement Agency] argument misconstrues the past-due support obligation to which the federal program applies. Section 644(c)[3], Title 42, U. S. Code defines "past-due

---

[3] This is an incorrect statutory reference. The correct reference is Title 42 U.S.C. § 664(c).

support" as "the amount of a delinquency." As applied to a debt or claim, "*delinquent*" means simply "due and unpaid at the time appointed by law or fixed by contract; as, a delinquent tax." Black's Law Dictionary (5 Ed.1979), at 385. Thus, a delinquency is created by a default in performance, not merely by the existence of an outstanding debt. An *arrearage* for purposes of Ohio Adm. Code Chapter 5101:1-30, therefore, is the amount of a delinquency resulting from the failure of an obligor to pay an amount when it is due according to the terms of a child support order, not simply the amount of a child support debt outstanding.

*Gladysz*, 658 N.E.2d at 312.

¶24 In *Dep't. of Revenue v. Cessford*, 100 So. 3d 1199 (Fla. Dist. Ct. App. 2nd Dist. 2012), the court considered the correctness of the Department of Revenue's (DOR) interception of Cessford's federal tax refund to apply to a child support obligation that had been imposed retroactively to the child's birth. The court order obligating Cessford to pay child support indicated that the retroactive portion of his monthly obligation would be satisfied by paying an additional $30/month. *Cessford*, 100 So. 3d at 1201. DOR subsequently intercepted Cessford's tax refund and applied the refunded amount of $4,089 to his $5,678 retroactive arrearage. Cessford challenged the DOR and both an administrative officer and the trial court ruled in his favor. *Cessford*, 100 So. 2d at 1201. DOR appealed. In affirming the trial court, the Florida Court of Appeals explained:

> The trial court found that the administrative order of support merely determined a retroactive child support amount and that Cessford was not delinquent in the payment of any court-ordered support. The court further ruled that Cessford was "not in arrears and is not delinquent" and noted that "[t]he establishment of retroactive support is not intended to establish arrears, nor is it properly considered a delinquency."

*Cessford*, 100 So. 2d at 1201. DOR was required to reimburse Cessford.

11

¶25    Lastly, in *Laub v. Zaslavsky*, 534 A.2d 1090 (Pa. Super. 1987), the Pennsylvania court was asked to review whether the IRS Intercept Unit for Philadelphia County correctly intercepted Zaslavsky's federal tax return to apply to "past-due support" as that term is defined in 42 U.S.C. § 664(c).  After restating the applicable federal law sections and looking to both Black's and Webster's dictionaries, the court turned to cases in the federal courts that had dealt with the federal intercept program to collect delinquent child support.  The court concluded, "We share the view reflected by these federal tribunals and conclude that the federal intercept program does not encompass situations where a parent has continually complied with his child support obligation, but where, nonetheless, arrearages are created as a result of the retroactive effect of an order of support." *Laub*, 534 A.2d at 1093.

¶26    We are persuaded by these cases and the reasoning set forth in them.  The District Court in the case before us relied upon the definition of "overdue support" codified at 42 U.S.C. § 666(e), to conclude that Kenck was delinquent in the payment of child support.  That definition begins with the phrase "overdue support means the amount of a **delinquency** . . . ."  (Emphasis added by this Court.)  As the above cases reflect, not all past due child support constitutes a "delinquency" on the part of the obligor.  As was the case here, Kenck's arrearage was the result of an agreement to pay a higher amount of child support to his son retroactive to the date of the child's mother's petition for modification.  Kenck timely paid these arrearages pursuant to the provisions of § 40-5-309(1)(a)(i)(B), MCA.  We conclude this arrearage does not constitute a delinquency or overdue child support, and the District Court erred in concluding otherwise.  Having so

12

concluded, however, we are nonetheless unfortunately constrained to uphold the dismissal of Kenck's Complaint.

¶27    Section 40-5-261, MCA, sets forth the procedures under which CSED makes information available to consumer reporting agencies. According to Subsection (1), "the Department may make information about a support debt available to consumer reporting agencies . . . upon request." The section further provides that the Department shall provide advance notice to the obligor concerning the proposed release of information, but that "lack of actual notice does not preclude the release of information to consumer reporting agencies." Subsection (2) provides that "[i]f contacted by an obligor wishing to contest the accuracy of information proposed for release to consumer reporting agencies," CSED must conduct a review or a hearing to reevaluate the accuracy of the information. Kenck does not contest that while on active duty he received a notice from CSED of its intent to report his arrearage to credit reporting agencies. Unfortunately, there is no allegation by Kenck nor is there any evidence in the District Court record that Kenck timely contacted CSED after receiving such notice, challenging the action or requesting a hearing. Consequently, Kenck did not avail himself of the statutory and administrative processes for challenging this action by CSED.

¶28    It is well established that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." The purpose of this "exhaustion doctrine" is to "allow a governmental entity to make a factual record and to correct its own errors within its specific expertise before a court interferes." *Shoemaker v. Denke*, 2004 MT 11, ¶ 18, 319 Mont. 238, 84 P.3d 4. Because this

13

procedural bar would preclude Kenck from pursuing further legal action against CSED for reporting his arrearage to credit reporting agencies, we decline to remand his complaints against CSED concerning this report. As Kenck could not prevail on his claim that CSED erroneously reported his arrearage as delinquent if the matter was remanded for trial, we decline to remand.

Private right of action under SCRA

¶29 Kenck asserts that the District Court erred in rejecting his private right of action under SCRA. We conclude that whether or not a private right of action under the SCRA would exist in this case—in itself a complicated question—Kenck would nonetheless be procedurally precluded from pursuing his claims under this Act. 50 U.S.C. app. § 521 of SCRA (upon which Kenck relies) provides specific methods for servicemembers to challenge, vacate or have default judgments set aside. Kenck received notice of CSED's intent to report his arrearage to the consumer credit agencies shortly after the October 2008 hearing at which he was represented by counsel. As noted above, he did not timely protest this action. Kenck obtained a credit report shortly after being discharged from the USAF on July 7, 2009. The credit report revealed that his arrearage had been reported as a "delinquency." At that time, he visited the Billings CSED office and verbally protested the accuracy of the report, and his counsel requested a written clarification on Kenck's payment record and the administrative arrearage from CSED counsel. The agency's attorney agreed and issued a written statement as discussed in ¶ 8 above. However, it does not appear that Kenck knew or was informed that under 50 U.S.C. app. § 521(g)(1) and (2) of the SCRA, he could file an application within 90 days of his discharge from

14

active service to have the default judgment vacated or set aside. It is undisputed that Kenck did not file such an application. As discussed above, Kenck's failure to avail himself of the prescribed method for obtaining a remedy unfortunately precludes him from doing so now.

42 U.S.C. § 1983 claim

¶30 Kenck conceded earlier in the proceeding that his § 1983 claim against CSED should be dismissed as CSED is not a "person" for purposes of § 1983. To the extent he claims his § 1983 claim vis-à-vis Fleming should not have been dismissed, Kenck fails to present a legal argument as required by M. R. App. P. 12(1)(h) (Rule 12). Rule 12 states that an appellant must set forth in his or her brief "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and pages of the record relied on." We have held that we will not consider unsupported issues or arguments, and that failure to comply with the rules of appellate procedure is fatal to an appeal; therefore, we decline to further address Kenck's § 1983 claim against Fleming. *In re Marriage of McMahon*, 2002 MT 198, ¶ 6, 311 Mont. 175, 53 P.3d 1266.

Fair Credit Reporting Act claim

¶31 Kenck claims that CSED's report of his administrative arrearage to the consumer credit reporting agencies violated his State Constitutional rights to privacy and due process. Mont. Const. art. II, §§ 10, 17. He argues that these constitutional rights were not preempted by FCRA as the District Court concluded.

¶32 As discussed above, while we agree that Kenck was not delinquent in his child support, we conclude nonetheless that the provisions of FCRA preempt Kenck's claim. As noted above, states are required to report child support information to credit reporting agencies. Section 40-5-261, MCA, and 42 U.S.C. § 666. FCRA mandates that consumer credit reports include the child support information provided by the state agency. 15 U.S.C. § 1681s-1. Furthermore, FCRA protects reporting state agencies from liability. 15 U.S.C. § 1681h. Lastly, FCRA prohibits states from imposing state laws "relating to the responsibilities of persons who furnish information to consumer reporting agencies" with some inapplicable exceptions. 15 U.S.C. § 1681t. Given that these statutes occupy the field from reporting to protection from liability, we conclude FCRA preempts Kenck's privacy claim. *See Purcell v. Bank of Am*., 659 F.3d 622 (7th Cir. 2011).

¶33 We now turn to Kenck's claim that he was deprived of due process. Under both federal and state jurisprudence the requirements for procedural due process are: (1) notice, and (2) opportunity for a hearing appropriate to the nature of the case. *Montanans for Justice v. State*, 2006 MT 277, ¶ 30, 334 Mont. 237, 146 P.3d 759. In the case before us, Kenck acknowledged that he was given notice of CSED's intention to report his administrative arrearage to the consumer reporting agencies. Under both state and federal law, Kenck had the opportunity at several junctures to timely challenge CSED's action but failed to do so. For these reasons, we conclude Kenck's constitutional procedural due process rights were not violated.

Rule 12(b)(6) dismissal of Kenck's Complaint

¶34   Having reached the conclusions set forth above, we need not address Kenck's claim that the District Court erred in dismissing his Complaint by failing to view it in a manner favorable to Kenck as required by Rule 12(b)(6).

¶35   While being bound by statutory and procedural bars to reach the conclusions we do, we recognize the resulting injustice. A servicemember who has both an exemplary record in the military and an exemplary record in his payment of child support has been branded a "delinquent" obligor in the eyes of potential employers. Consequently, he has lost significant career opportunities—opportunities that would have benefited his child as well as himself. It appears that CSED had opportunities to help Kenck understand and protect his rights but did not do so. For example, CSED could have implemented § 40-5-262(3), MCA, allowing it to consider Kenck's payment record, the availability of other remedies and other matters relevant to determining whether to release the administrative arrearage information to the credit reporting agencies. There is no evidence that it considered this discretionary opportunity.

¶36   Moreover, Kenck visited the Billings CSED office within days of being discharged from the USAF, contesting the characterization of his child support account as delinquent and the reporting of his arrearage to the consumer reporting companies in the first place. It does not appear that CSED assisted Kenck in understanding what steps he could take to challenge the inaccurate report, nor did it advise him that such actions must be taken within 90 days of his discharge.

¶37 We determined above that Kenck's arrearage did not constitute a delinquency or overdue child support. Opinion, ¶ 26. While we cannot resurrect Kenck's claims for damages, we can and do remand this matter to the District Court with instructions that it direct CSED to provide notice of this Opinion to the credit reporting agencies to whom it reported Kenck's arrearage, with a request that said agencies remove from their data base any and all reference to Kenck having been in arrears or delinquent in the payment of his child support obligations. We further direct the District Court to monitor CSED's compliance with this directive, and ensure that Kenck's counsel is copied with all documents CSED submits to and receives from the credit reporting agencies in its efforts to accomplish this objective.

¶38 Finally, it is evident that the problem we confront here is occasioned by the fact that there is no distinction made in either the child support or reporting statutes between arrearages and delinquencies. We therefore urge the legislature to address this statutory shortcoming so as to ensure that in the future, an administrative arrearage created by operation of law shall not be reported by CSED to consumer reporting agencies, nor shall it be deemed as delinquent or overdue child support for any reporting purposes.

**CONCLUSION**

¶39 Affirmed and remanded.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE

18